[Nos. 38279, 38252.    Department Two.    March 9, 1967.]

*In the Matter of the Appeal of* ALL-STATE CONSTRUCTION CO., INC.

ALL-STATE CONSTRUCTION CO., INC., *Respondent,* v. JOHN F. GORDON, *Appellant.**

*Reported in 425 P.2d 16.

*The Attorney General, Richard M. Montecucco* and *Robert N. Gates, Jr., Assistants,* for appellant.

*George R. Mosler,* for respondent.

DONWORTH, J.—This is an appeal by the Commissioner of Employment Security from a superior court judgment setting aside an assessment against respondent, All-State Construction Company, for unemployment compensation fund contributions.

On July 23, 1963, an order and notice of assessment for contributions to the unemployment compensation fund allegedly due under RCW 50.24.010, in the amount of $6,935.62, was served on All-State as provided in RCW 50.24.070. All-State appealed therefrom to the appeal tribunal under RCW 50.32.030, contending that the individuals whose wages or remunerations were covered by the assessment were not employees under the terms of the Employment Security Act and, consequently, no payment was due from All-State. A hearing was had before an appeals examiner for the appeal tribunal, who affirmed the assessment. Upon petition for review filed by All-State with the Commissioner of Employment Security, the commissioner reviewed the case and upheld the decision of the appeal tribunal.

Respondent, All-State, then appealed to the Superior Court for King County from the commissioner's decision as provided in RCW 50.32.120 and 150. The superior court set aside the assessment, holding that the "applicators," who installed aluminum siding pursuant to respondent's contracts with homeowners, were "independent contractors," and not employees of All-State.

■ We note that this is an administrative appeal. Under the statutory provision last referred to, the decision of the commissioner is to be considered as prima facie correct, and the burden of the proof is upon the party attacking it. The facts as found by the examiner and adopted by both the appeal tribunal and the commissioner are the established facts upon appeal to the superior court. Since that court expressly adopted those findings and no error is assigned thereto, this court is bound thereby.

The facts, as found by the examiner for the appeal tribunal, are as follows:

The All-State Construction Company, Inc. (hereinafter called the petitioner) is a Washington corporation engaged in home modernization and improvements since January 1961, with special emphasis on the use of aluminum siding. However, contracts are accepted for the addition of rooms, concrete work, installing doors and windows, roofing, ornamental iron work, etc.

Although the company uses direct advertising in magazines, on radio and television, and occasionally telephone solicitation, the principal means of obtaining business is through salesmen, also referred to as dealers or agents. Salesmen contact the prospective customer, sell them a home modernization job, and obtain a signed contract from the home owner setting out the specific work to be performed and the total price for the materials and the installation. If the payment is not to be cash, an application for deferred payment is also completed by the salesman so the necessary financing can be arranged through a finance company or bank. After approval of credit, the salesman confers with an applicator, an individual who applies the aluminum siding, to agree on a price the applicator will charge for any special work required by the customer including such items as adding on a porch, installing windows or doors, adding on a room to the house, or other remodeling desired by the customer. *Although some of the jobs obtained by the salesmen are entirely remodeling, the overwhelming majority are for the installation of aluminum siding with some additional remodeling or for siding only.*

The petitioner [respondent in this court] knows a number of applicators and their special qualifications.

Usually the petitioner calls an applicator, although in some instances the applicator may call the company. Some of the applicators work exclusively for the petitioner while others may work for several companies engaged in modernization work similar to that done by the petitioner. The applicator is given a work order listing the location of the job, the type and amount of material to be installed, and listing special work other than roofing or siding, such as installation of doors, windows, etc. After looking at the job, the applicator makes his bid for the labor costs on extra work because the price for installing aluminum siding is standardized and all applicators get $15.00 a square (100 sq. ft.) for installing aluminum siding, regardless of which company has the job. If the salesman and applicator agree on the price, he is given the job. If the salesman thinks the price too high, he asks another applicator to bid. The amount finally agreed upon is the price or the labor cost which the applicator receives upon completion of the job. The average job is completed in two days, although some take longer. At the completion of the job, the applicator submits a form showing what materials were installed and obtains a completion certificate from the customer for whom the work is done. Upon bringing these documents to the petitioner's office, he is immediately paid in full for the job, less any materials he may have charged to the company. The aluminum siding and components are always furnished by the petitioner, but the applicator may have purchased lumber, casings, etc. from some other supply house or lumber yard. Usually these purchases are charged directly to the petitioner with the petitioner's knowledge and consent. In a few instances the applicator may make a cash purchase of material for which he is reimbursed at the time of settlement. The applicator guarantees his workmanship as a part of his contract and would be required to re-do work without additional compensation if it is established his workmanship was faulty. None of the witnesses at the hearing could recall of an instance when they were called back to do such additional work because of faulty workmanship, although one witness did recall re-doing a job some other installer had not done correctly.

An applicator who takes a job from the petitioner follows his own methods but is expected to complete the job in a manner to satisfy the customer. He may work alone

or have a helper, usually a partner. He furnishes all of his hand and power tools, the scaffolding or other equipment needed to perform the work, and usually has his own truck or station wagon to carry tools and equipment and allow him to haul small items he might need, such as doors or windows. Most of the material needed, such as the siding and components, is delivered to the customer's house by the petitioner. The applicator may also work on more than one job at a time and ordinarily there is no set date he must finish a job. Usually the applicator is anxious to finish the job as quickly as possible since he receives no money until it is completed. The applicator does not solicit business directly from home owners, nor do any of them advertise or represent themselves as contractors or installers of aluminum siding. When working on a job, should the home owner want some additional work done, the applicator notifies the company and the salesman is sent out to make arrangements for the additional work desired. The petitioner pays premiums to the State Department of Labor and Industries to cover injuries or accidents sustained by the applicators when working on any contract with All-State Construction. The petitioner does not withhold income tax or Social Security and has not paid Social Security taxes or Unemployment Insurance on the amount paid to applicators. Some of the applicators indicate that they make their own Social Security payments as a self-employed individual, although some witnesses worked enough for other companies that did deduct for Social Security they were already fully covered. There appears to be no uniform practice, but the testimony of the witnesses indicates that most of the companies installing aluminum siding withhold income tax and Social Security from the remuneration paid to the applicator.

In doing a job, no one from the petitioner's office routinely inspects the work or directs the applicator in the performance of his job. In those instances where the applicator does not complete a job, it is usually the decision of the applicator himself or a mutual agreement between the applicator and the petitioner because of a complaint from the customer and the applicator considers it best to have another man finish the job. In such instances each applicator has been paid for the proportion of the work he performed on the job. (Italics ours.)

The sole issue involved in this appeal is the legal question whether the applicators are employees or independent contractors under the statutory definition of the Employment Security Act (RCW Title 50).

RCW 50.04.100 provides that:

"Employment", subject only to the other provisions of this title, means personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

Personal services performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provisions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however,* That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor.

RCW 50.04.140 provides that:

Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless and until it is shown to the satisfaction of the commissioner that

(1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

(3) such individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service.

■ The examiner concluded that the applicators met exceptions (1) and (2) above, but failed to meet exception

(3) of RCW 50.04.140. Since the three exception tests are stated in the conjunctive, if the applicators fail to meet any one of them they must be deemed to be employees under the act.

The bases for the appeals examiner's conclusion that the applicators did not meet the requirements of subsection (3) above were stated by the examiner to be that:

[S]ome conditions we would regard as the most common tests of an independently established business are lacking. For example, none of the applicators find it necessary to have an office or place of business outside his own home. The contract with the petitioner involves no financial risk to the applicator and no investment of his own capital. He does not advertise, solicit business from the public, or represent himself as an individual engaged in an independent business venture. The material needed for the job is usually supplied entirely by the petitioner and delivered to the job site. Occasionally the applicator must obtain a small amount of lumber or other supplies, but this is usually charged directly to the petitioner. The material the applicator has to get personally is normally a small part of the total material used. While the presence or absence of any single factor does not establish the applicator is or is not independently established, the factors related above tend to establish that the applicator is primarily a worker paid on a piece-rate basis. His remuneration is based entirely on his estimate of the time he must spend to do the job and does not involve risks which might result in financial loss or in a financial gain in excess of a normal wage rate. This is the typical test of a business venture. Many applicators have obtained a tax number from the State Tax Commission, but since the applicators do not collect sales tax for material used, they have no sales tax to report. It is also of significance that none of the witnesses were registered under the new contractor's law, although such registration has been required since August 1, 1963, when an individual is doing business in this state as a contractor or subcontractor. It would be our ultimate conclusion, therefore, that the evidence in the record does not establish that the individuals engaged as applicators are customarily engaged in an independently established trade, occupation or business of the same nature as that involved in the contract of service. ..

The trial court, in its oral opinion, stressed two statements made by the appeals examiner in his written findings, that "After looking at the job, the applicator makes his bid for the labor costs on extra work," and "If the salesman thinks the price too high, he asks another applicator to bid."

The trial court concluded:

In picking up these Findings by the four corners the Court has come to the conclusion that the applicators are independent contractors and that the exception test with reference to Section 15 (c) [RCW 50.04.140(3)]: "such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service," has been sustained.

The Court is dismissing the action. The appeal is granted.

Essentially, for the reasons stated by the appeals examiner, we are of the opinion that the trial court's conclusion was incorrect.

It must be kept firmly in mind that the test to be applied in determining the status of these applicators under the Employment Security Act is a statutory one. Common law distinctions between employees and independent contractors are inapplicable. In *Skrivanich v. Davis,* 29 Wn.2d 150, 158, 186 P.2d 364 (1947), this court pointed out that:

It is apparent that the 1945 legislature intended and deliberately concluded to extend the coverage of the 1943 unemployment compensation act and, by express language, to preclude any construction that might limit the operation of the act to the relationship of master and servant as known to the common law or any other legal relationship.

In *Unemployment Compensation Dep't v. Hunt,* 17 Wn.2d 228, 236, 135 P.2d 89 (1943), we said:

We have upon a number of occasions held that our unemployment compensation act does not confine taxable employment to the relationship of master and servant, but brings within its purview many individuals who would otherwise have been excluded under common-law concepts of master and servant, or principal and agent.

■ We must further keep in mind the applicable presumptions and burden of proof. First, an exemption in a statute imposing a tax must be strictly construed in favor of the application of the tax and against the person claiming the exemption, *Unemployment Compensation Dep't v. Hunt, supra,* and the burden of proof is upon the one alleging the exemption. *In re St. Paul & Tacoma Lumber Co.,* 7 Wn.2d 580, 110 P.2d 877 (1941). Secondly, in an appeal such as we have here arising from the Employment Security Act, the "decision of the commissioner shall be prima facie correct, and the burden of proof shall be upon the party attacking the same." RCW 50.32.150.

■ To meet the exception test set forth in subsection (3) of RCW 50.04.140, the applicator's occupation must be an "independently" established one in which he is "customarily" engaged.

The Oregon Supreme Court, in construing a similar provision, contained in ORS 657.040, reached the conclusion that applicators, under circumstances strikingly similar in many respects to the ones in the present case, were employees and not independent contractors falling within the exception. *Baker v. Cameron,* 240 Ore. 354, 362, 401 P.2d 691 (1965). The facts were summarized in that case as follows:

> The roofing or siding is put on by applicators who have been in home improvement work for a substantial time. They get their work by being called by the suppliers or by their calling the suppliers. Applicators are paid on a piece-rate basis, so much per square-unit of material applied. The applicators frequently work in a two-man partnership, splitting the pay 50-50; they have no employees. They furnish their own tools and pay their own expenses.
>
> The applicators will usually not work upon more than two jobs at the same time. These jobs may be for two different suppliers. . . .
>
> The specifications for the work are fixed by the supplier. . . . The supplier does not set the hours to be worked by the applicators or a time for completion of the job. However, the applicators pointed out that if the jobs were unduly delayed or not performed satisfactorily,

they did not receive any more contracts from that supplier. When an applicator starts to do work for a supplier with whom he has not before worked, the supplier will come around and check; after that initial period the supplier does not come to the jobs. The applicators also do other types of home improvements such as building additions on homes.

No advertising is done by the applicators except a telephone listing. They carry no name on their trucks.

The Oregon court then cites Willcox, The Coverage of Unemployment Compensation Laws, 8 Vand. L. Rev. 245, 264-265 (1955), for an analysis of the "independently established" provision:

"*   *   * Given full scope, it requires not only that the worker be himself an entrepreneur, but also that the service be rendered by him in that capacity; and it thus approaches, as nearly as a formal test can approach, the economic line that bounds the risk of unemployment. The double requirement, that the worker's occupation be 'independently established' and that he be 'customarily' engaged in it, clearly calls for an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship.   *   *   *"

In discussing the factors to be considered in determining whether the individual is engaged in an "independently established business," the same author (Willcox) states, at 265:

"*   *   * Most important for unemployment compensation are those factors—investment, good will, an independent clientele, and the like—which enable the worker to continue in business if he loses a particular customer, and which thus prevent that loss from rendering him unemployed.   *   *   *"

Also holding similarly situated "applicators" to be employees and not independent contractors under identical statutory provisions is the Michigan Supreme Court in *O'Brian v. Michigan Unemployment Compensation Comm'n*, 309 Mich. 18, 14 N.W.2d 560 (1944).

In arriving at our decision in this matter, we have considered the decision of the Appellate Court of Indiana in

*Alumiwall Corp. v. Indiana Employment Security Bd.,* 130 Ind. App. 535, 167 N.E.2d 60 (1960), which was cited by respondent in its additional authorities. The Indiana statute involved is substantially the same as our statute, and the business activities of the applicators were similar to those of the applicators involved in the case at bar except that their helpers received their pay from the Alumiwall Corporation, which deducted the amount thereof from the compensation earned by the applicators.

However, we think that the logic of the decisions in the Oregon and Michigan cases cited above is more persuasive than that of the Indiana intermediate appellate court.

We find no evidence in the record sufficient to support a finding that the applicators in this case meet the requirements of RCW 50.04.140(3). The fact that they occasionally negotiate with the salesmen of respondent for the amount to be paid them as compensation for extra work to be done under the contract in addition to the installation of aluminum siding, does not suffice to meet the statutory requirements above referred to.

The judgment of the trial court reversing the decision of the commissioner and ordering that the order and notice of assessment be struck is hereby reversed.

■ An ancillary question is posed by appellant in this case: Did the filing of the notice of appeal suspend and supersede the superior court judgment, thereby rendering the judgment entered by the superior court ineffective to exonerate and discharge the appeal bond posted by respondent on its earlier appeal to superior court, pursuant to RCW 50.32.130? We hold that it did not.

Appellant earlier brought an "application for Writ of Supersedeas" to this court, Supreme Court File No. 38252, in an attempt to require respondent to maintain in full force and effect the appeal bond originally filed in its appeal to the superior court. A hearing was held before the Chief Justice on May 13, 1965, following which the Chief Justice signed an order denying the writ, and stating in part:

Ordered that the respondent, All-State Construction Co., Inc., need not keep in force and effect the bond previously filed in the Superior Court in this action.

Assuming that this issue is still available to appellant, we are of the opinion that the Chief Justice's order was correct. The contention made is without merit.

HILL, ROSELLINI, and HAMILTON, JJ., and LANGSDORF, J. Pro Tem., concur.

May 22, 1967. Petition for rehearing denied.