[No. 43809.    En Banc.    December 11, 1975.]

VERNE SCHUFFENHAUER, *Appellant*, V. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent*.

*Oberquell & Ahlf*, by *Argal D. Oberquell*, for appellant.

*Slade Gorton, Attorney General*, and *Joseph M. Littlemore* and *Thomas J. Wolfstone, Assistants*, for respondent.

UTTER, J.—Appellant, Verne Schuffenhauer, is a wholesaler of clams. The Washington Employment Security Department levied an assessment on him for unemployment compensation fund contributions. The department claimed individuals who dug clams for him on his leased tidelands were employed by him within the scope of RCW 50.01 *et seq.*, the Employment Security Act. This order of assessment was upheld by an appeal examiner at a departmental hearing, by the commissioner of the department and on appeal by the superior court.

The two issues before us are whether the services performed by clam diggers for Schuffenhauer constitute "employment" as defined in RCW 50.04.100 and 50.04.140 and, alternatively, whether he is exempt from assessment because the services performed fall within the agricultural labor exemption of RCW 50.04.150. We uphold the commissioner's determinations that clam digging performed for appellant is employment by him within the terms of the act and does not constitute agricultural labor.

Appellant employs one salaried full-time employee for whom he contributes to the unemployment compensation fund. The other workers who dig clams for him control their own hours, subject to the tides, and no specified amount of clams are required to be harvested by them. These diggers are paid by the weight of clams delivered. Appellant's full-time employee is present at the leased tidelands during this digging, chooses the digging area and transports the necessary gear to it. Supervision is furnished by him over the digging to make sure the workers properly turn and loosen the tidelands while harvesting. In the past, appellant has refused to allow some diggers to dig on these tidelands when clams they recovered were substantially

unmarketable. Most of the diggers have other jobs, some attend school, and there is no indication in the record of the extent to which appellant's diggers work for other clam wholesalers, if at all.

The gathering of appellant's clams on appellant's tidelands is accomplished by digging with a large fork. The ground is turned over and loosened to increase the productivity of the digging area. Clams grow from free-swimming larva which mature near the surface of the tidelands. By contrast, oysters are normally produced from seeds which adhere to rough shells or other surfaces prepared on the oyster lands. Appellant does not use artificial means to seed the clam tidelands.

■■ · Judicial review of administrative action is governed by RCW 34.04.130(6) which authorizes a court to reverse the decision of an administrative agency "if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order . . ." Appellant argues the findings of the commissioner are "clearly erroneous" in that they are not supported by any evidence. As we decided in *Ancheta v. Daly*, 77 Wn.2d 255, 259, 461 P.2d 531 (1969), an administrative determination is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with the " 'definite and firm conviction that a mistake has been committed' " (quoting from *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948)). Under the Employment Security Act the decisions of the commissioner are "prima facie correct" and the burden of proof is upon the party attacking the decision. RCW 50.32.150; *In re All-State Constr. Co.*, 70 Wn.2d 657, 659, 425 P.2d 16 (1967).

The public policy of the act, made a part of the standard of review by RCW 34.04.130(6)(e), is found in the preamble which states, "the compulsory setting aside of unem-

ployment reserves" is required to alleviate the many. adverse effects of involuntary unemployment. RCW 50.01.010. The preamble further states, and we have held, that the act should be liberally construed in order to accomplish this objective. *Cowiche Growers, Inc. v. Bates,* 10 Wn.2d 585, 593, 117 P.2d 624 (1941); *Amburn v. Daly,* 81 Wn.2d 241, 248, 501 P.2d 178 (1972).

Appellant and respondent concede that the relationship between the clam diggers and appellant constitutes "employment" within RCW 50.04.100.[1] The parties dispute, however, whether the services of clam diggers satisfy RCW 50.04.140[2] excluding certain services from the definition of employment. Appellant must satisfy all three conditions set forth in that section in order to establish his exemption from the payment of contributions. *Unemployment Compensation Dep't v. Hunt,* 17 Wn.2d 228, 237, 135 P.2d 89

---

[1] RCW 50.04.100:

"Employment. 'Employment', subject only to the other provisions of this title, means personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

"Personal services performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provisions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however,* That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor."

[2] RCW 50.04.140:

"Employment—Exception tests. Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless and until it is shown to the satisfaction of the commissioner that

"(1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(2) such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(3) such individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service."

(1943). To succeed, appellant must show (1) clam diggers are in fact free from control or direction over the performance of their services, (2) the digging is either outside the usual course of the clam producing business or performed outside of all places of business of the clam wholesaler, and (3) the diggers are customarily engaged in an independently established occupation of the same nature as clam digging. With respect to these exemption tests, no distinction is drawn between part-time or temporary employment and full-time employment. *Sound Cities Gas & Oil Co. v. Ryan*, 13 Wn.2d 457, 467-68, 125 P.2d 246 (1942); *see* RCW 50.04.270. *See Mulhausen v. Bates*, 9 Wn.2d 264, 114 P.2d 995 (1941), and *State ex rel. Mulhausen v. Superior Court*, 22 Wn.2d 811, 157 P.2d 938, 160 A.L.R. 692 (1945). In these cases, an Oregon wholesale and retail dealer of margarine asserted that his representatives in Washington were not in his employment under the predecessor statute worded identically to RCW 50.04.140. Although these representatives handled other food products from other manufacturers, paid their own expenses, performed the services at their convenience, had their territory defined only in a general way, and were paid on a commission basis, the court held an employment relationship existed. Here there was some direction by appellant Schuffenhauer's full-time employee over the clam digging process. He selects the location of the digging and supervises the quality of the clams recovered and the quality of the digging itself. Also, the right of termination for substandard work, exercised by appellant in refusing to pay diggers who repeatedly recover unmarketable clams, is incompatible with freedom from control over the performance of services. *Sound Cities Gas & Oil Co. v. Ryan, supra* at 467. The commissioner's findings as to control and direction are supported by the record and not clearly erroneous.

Nor do the services performed by the clam diggers here satisfy subsection two of RCW 50.04.140. The digging takes place on land leased by appellant, and thus not outside all places of his business. *In re Miller,* 3 Wn.

App. 503, 476 P.2d 138 (1970). The services of the diggers do not satisfy the other portion of the subsection's disjunctive test inasmuch as their work is not outside the usual course of business of a clam producer and wholesaler. In interpreting subsection three, we have stated " '[t]he double requirement, that the worker's occupation be "independently established" and that he be "customarily" engaged in it, clearly calls for an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship.' " *In re All-State Constr. Co.,* *supra* at 666. Appellant has made no showing that the diggers who perform services for him satisfy this requirement. His hiring of clam diggers is "employment" which does not meet any of the three tests required to establish an exemption from unemployment compensation contributions.

■ Appellant's claim that clam diggers are not in his "employment" since their services are agricultural labor within RCW 50.04.150[3] and thus exempt from the coverage

---

[3]RCW 50.04.150:

"Employment—Agricultural labor. The term 'employment' shall not include service performed:

"(1) On a farm, in the employ of any person, in connection with the cultivation of the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and furbearing animals and wild life, or in the employ of the owner or tenant or other operator of a farm in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment; or

"(2) In packing, packaging, grading, storing, or delivering to storage, or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations. The exclusions from the term 'employment' provided in this paragraph shall not be deemed to be applicable with respect to commercial packing houses, commercial storage establishments, commercial canning, commercial freezing, or any other commercial processing or with respect to services performed in connection with the cultivation, raising, harvesting and processing of oysters or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

of the Employment Security Act must be closely scrutinized inasmuch as the act is a taxation statute. *See* RCW 50.04.072. In *In re Fors Farms, Inc.*, 75 Wn.2d 383, 387, 450 P.2d 973 (1969), we recently reaffirmed that an exemption from a taxation statute must be strictly construed in favor of the application of the tax, and that the burden of proof is on the party claiming the exemption. *Accord, In re All-State Constr. Co.*, 70 Wn.2d 657, 665, 425 P.2d 16 (1967). Closer scrutiny is required where the taxes to be saved by reliance on an exemption are imposed for the benefit of a particular group which society seeks to aid, such as unemployed workers. *In re Fors Farms, Inc., supra* at 391.

Under RCW 50.04.150 "employment" does not include services performed "[o]n a farm . . . in connection with raising or harvesting any agricultural . . . commodity, including raising . . . and management of . . . wild life . . ." In 1957, the section was amended to exclude the "cultivation, raising, harvesting and processing of oysters" from the exemption. As we understand appellant's argument, he urges that because oyster and clam "farming" are identical, the failure of the legislature to also specifically exclude clam production necessarily leads to the conclusion that it remains exempt. We cannot agree. The appeal examiner indicated the words "farm" and "cultivation" are not defined in the act and therefore must be given their commonly accepted meaning. *Webster's Third New International Dictionary* (1971) gives the following definition of the noun "farm": "6b: a tract of water reserved for the artificial cultivation of some aquatic life-form (an oyster)." "Cultivate" is defined as "1: to prepare for the raising of crops: prepare and use for such a purpose: till (the soil); *specif*: to loosen or break up the soil about (growing crops or plants) for the purpose of killing weeds and modifying moisture retention of the soil esp. with a cultivator 2: to protect and encourage the growth of: a: to till or labor over; *esp*: to apply methods of culturing to (oysters) (yeasts) . . ."

The appeal examiner found a factual distinction to

exist between clam and oyster operations inasmuch as seeding is not involved in clam production and the only labor involved in clam production is the digging, an incidental result of which is an increase in productivity. This conclusion of the appeal examiner is amply supported by the record, and is appropriate in light of the requirement to construe tax exemptions narrowly. These distinctions preclude a determination that clam and oyster operations are identical. In fact, oyster farming had been specifically determined to be agricultural labor prior to 1957. 11 Unempl. Ins. Rep. (Wash.) ¶ 1365.17; 11 Unempl. Ins. Rep. (Wash.) ¶ 8270.04. The published decisions of the employment security department, however, do not indicate clam production had, prior to this case, ever been expressly considered to be within the exemption. This history shows that clam and oyster operations were not treated alike prior to the 1957 amendment; therefore, no inference can be drawn that clam operations continue to be exempt from the coverage of the act.

Our review of the evidence does not leave us with a "definite and firm conviction" that the commissioner's findings are mistaken and, therefore, we cannot say they are clearly erroneous. In examining the statute, we also find no clear intention on the part of the legislature to exempt clam operations from taxation. Lacking this, the agricultural labor exemption must be strictly construed in favor of the application of the tax. *In re Fors Farms, Inc., supra.*

Judgment affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.