[No. 4126–1.   Division One.   June 27, 1977.]

THE DAILY HERALD COMPANY, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Slade Gorton, Attorney General,* and *Joseph M. Littlemore* and *Stephen W. Burke, Assistants,* for appellant.

*Anderson, Hunter, Dewell, Baker & Collins, P.S.,* and *Thomas R. Collins,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This is an appeal from a judgment of the Superior Court reversing decisions of the commissioner and appeal tribunal of the Employment Security Department which had held The Daily Herald Company, d/b/a The Everett Daily Herald, liable for unemployment compensation taxes for persons referred to as "bundle droppers" or "contractors" who transported the Herald's bundled newspapers to "drop points" which supplied the carrier routes.

The relationship between the bundle droppers who loaded, transported and delivered the newspapers to various points within the Herald's circulation area is governed by a written Hauling Contract (Appendix). The contract provided in material part that: The bundle droppers were independent contractors for all purposes and not employees of the Herald; the Herald had no right of control over the

bundle droppers in their performance of the contract; and the Herald would make no unemployment contributions.

The contract further provided that the bundle droppers could have their own employees and subcontractors whom they would have to compensate. The uncontroverted testimony at the departmental hearing established that the bundle droppers in many cases used and compensated their own subcontractors or substitutes to perform their obligations under the contracts. The pay and mileage of each bundle dropper was separately negotiated between the bundle dropper and the Herald.

The Department determined that the services performed by the bundle droppers for the Herald constituted "personal services" within the purview of RCW 50.04.100[1] which defines "employment" under the Employment Security Act. The Department thereupon held the Herald liable to the Department for unemployment taxes based on the payments which had been made by the Herald to the bundle droppers.

After exhausting its administrative remedies within the Department, the Herald brought the controversy before the Superior Court for review pursuant to the administrative procedures act, RCW 34.04. Following a review of the entire record of the departmental proceedings, the Superior Court reversed the decision of the Department and dismissed the proceeding with prejudice. It is from this judgment of the Superior Court that the Department appeals.

---

[1] "Employment. 'Employment', subject only to the other provisions of this title, means personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

"Personal services performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provisions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however,* That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor." RCW 50.04.100.

The appeal presents two issues.

## ISSUES

ISSUE ONE. What is the proper scope of judicial review in this case?

ISSUE TWO. Should we reinstate the decision of the Employment Security Department that a newspaper publishing company owes unemployment contributions for payments made to bundle droppers who have a newspaper hauling contract with the publishing company?

## DECISION

ISSUE ONE.

CONCLUSION. Where, as here, the question for review is whether an agency has committed an error of law or an error involving a mixed question of law and fact, the agency's decision is to be reviewed under the "error of law" standard of RCW 34.04.130(6)(d).

Each level of the judiciary reviews administrative decisions in an appellate capacity. This court, therefore, stands in the same position as the trial court when reviewing the decision of an administrative agency. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974); *Eggert v. Department of Employment Security*, 16 Wn. App. 811, 813, 558 P.2d 1368 (1976).

Whether or not the bundle droppers' activities constituted "employment" under RCW 50.04.100 is a decision reviewable under the administrative procedures act, RCW 34.04. *Schuffenhauer v. Department of Employment Security*, 86 Wn.2d 233, 235, 543 P.2d 343 (1975). That act so far as it is here pertinent provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other *error of law;* or

(e) *clearly erroneous* in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

(Italics ours.) RCW 34.04.130(6).

The Department urges that we review the administrative proceedings in this case under the "clearly erroneous" standard of subsection (e) of the statute. Under that subsection, the public policy of the act is a part of the standard of review. *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 274, 552 P.2d 674 (1976). The public policy of the Employment Security Act is to reduce involuntary unemployment and the suffering caused thereby to the minimum. RCW 50.01.010. As we have recently held, that is a strong public policy and the Employment Security Act is to be liberally construed to that end. *Dairy Valley Prods., Inc. v. Department of Employment Security,* 15 Wn. App. 769, 772, 551 P.2d 1035 (1976).

The Herald, on the other hand, asks that we review the departmental proceedings using the "error of law" standard of subsection (d) of the statute, a standard of review which does not encompass the policy of the legislative enactment. *Department of Revenue v. Boeing Co.,* 85 Wn.2d 663, 667, 538 P.2d 505 (1975).

It is not contended that any of the other subsections of RCW 34.04.130(6), *supra,* are involved in this case.

The standard to be applied in judicial review is determined by the type of administrative determination that is being reviewed. The means for categorizing an administrative decision as factual, legal or as a mixed question of law and fact have recently been treated at length by our State Supreme Court in *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 282, 525 P.2d 774 (1974) and we need not further deal with such means here.

Where the administrative determination is of a factual issue, the standard to be applied in a judicial review of that determination is the "clearly erroneous" standard of RCW 34.04.130(6)(e). *Leschi Improvement Council v. State Highway Comm'n, supra* at 281–82. On the other hand, where the agency's determination was of an issue of law or a mixed question of law and fact, review is pursuant to the "error of law" standard of RCW 34.04.130(6)(d). *Department of Revenue v. Boeing Co., supra* at 666–67.

█ The issue in the case before us is a mixed question of law and fact in that what *activities* are being performed by the bundle droppers is a question of fact depending on the circumstances presented, but whether such activities constitute *personal services* or not is a question of law. *Department of Revenue v. Boeing Co., supra.* The Department concedes that the issue in this case is a mixed question of law and fact but argues that nevertheless the scope of review should be the "clearly erroneous" test. That argument is not tenable, however, in the face of the Supreme Court's recent holding to the contrary that

> When an agency allegedly makes an error of law or, as here, an error involving a mixed question of law and fact, its decision is properly reviewable pursuant to subsection (d) of RCW 34.04.130(6), *supra*. In such a case, the policy of the statute in question is not controlling and cannot be invoked to alter established legal principles, particularly when the statute on its face *retains* such principles.

*Department of Revenue v. Boeing Co., supra* at 667.

Issue Two.

Conclusion. The trial court correctly reversed the decision of the Department since the Department committed an error of law when it determined that bundle droppers were performing "personal services" for the Herald and then on that basis held them to be in the "employment" of the Herald within the definition of that term in RCW 50.04.100 (footnote 1).

Prior to 1945, RCW 50.04.100 used the term "services." Laws of 1937, ch. 162, § 19(6)(g)(1), p. 610–11. In 1945, that

statute was amended and the term "personal services" was added. Laws of 1945, ch. 35, § 11, p. 79. The term "personal services" is still in the statute.

■ "Personal service" as used in the statute has been defined by our State Supreme Court:

> The term 'personal service' indicates that the 'act' done for the benefit of another is done *personally* by a particular individual."

*Skrivanich v. Davis,* 29 Wn.2d 150, 161, 186 P.2d 364 (1947), quoting with approval from *Creameries of America v. Industrial Comm'n,* 98 Utah 571, 102 P.2d 300 (1940).

In the present case the contract by its terms imposed a burden on the bundle droppers as contract haulers to obtain substitutes and it authorized them to contract out performance of the work, and in many instances, they did so. Nothing in the contract limited them to working for the Herald or prevented them from performing like services for other newspapers. Viewed by the definition of *Skrivanich v. Davis,. supra,* the bundle droppers were not performing personal services for the Herald within the purview of RCW 50.04.100 (footnote 1).

■ In making this determination, we note that both the departmental "Findings of Fact" and its "Conclusions" deal primarily with the Department's interpretation of the contract. See Appendix. Few ultimate facts were found by the Department though a number of evidentiary ones were touched upon. As one finding of fact notes:

> The testimony includes some specific operational rules or practices in effect in the distribution work which the bundle droppers are required to perform which are not included, expressly, in the "Hauling Contract", and which explain, but do not contradict, provisions in the written contract.

Finding of fact No. 4 (part). Thus, under the circumstances presented, the basic question on review is the interpretation of the contract and that is a question of law.

*Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 543 P.2d 343 (1975), which is heavily relied

on by the Department, is not in point. In *Schuffenhauer,* the parties conceded that the clam diggers upon whose income the Department sought to levy taxes came within the statutory definition of "employment" in RCW 50.04-.100, and the issue there was whether the clam diggers came within the statutory exemptions provided by RCW 50.04-.140 and RCW 50.04.150. These exemption statutes are not involved in the present case.

We affirm the judgment entered by the trial court reversing the decision of the Employment Security Department.

FARRIS, C.J., and WILLIAMS, J., concur.

## APPENDIX

### HAULING CONTRACT

THIS AGREEMENT between THE DAILY HERALD COMPANY, a Washington corporation, hereinafter called THE HERALD, and _____, hereinafter called the CONTRACTOR.

THE HERALD publishes daily (except Sundays) a newspaper at Everett, Snohomish County Washington, and in the course of distribution of said newspaper, it is necessary that "drops" containing bundled newspapers be transported daily (except Sundays) to certain designated "drop points" to supply carrier routes.

The parties AGREE as follows:

1. The CONTRACTOR agrees to load, transport, and deliver "drops" from the office of THE HERALD at Everett, Washington, to various drop points designated by THE HERALD and set forth in Schedule "A" attached. Said "drops" to be loaded for delivery at THE HERALD office, daily (except Sundays), not later than ___ P.M. on regular days and ___ P.M. on holidays, for immediate transportation to all drop points. A "drop" is defined as the quantity of newspapers (Packaged in one or more bundles) necessary to service one merchant carrier route.

2. The CONTRACTOR warrants that he will furnish a motor vehicle or vehicles "exempt" from the Motor Freight Carriers Act of the State of Washington or in lieu, will comply therewith and further agrees to pay all costs and expense in connection with the operation of said vehicle or vehicles and to so transport said newspapers as to keep them dry and undamaged.

THE HERALD agrees to pay the CONTRACTOR for said cartage the minimum sum of ___ Dollars per month payable on or before the 5th day of each month for cartage performed during the previous month.

4. In fixing the contract price it is contemplated that the CONTRACTOR will be required to load, transport, and deliver ___ separate drops daily (except Sundays) and will be required to travel approximately ___ miles daily (except Sundays) in order to perform said contract. However, it is agreed that THE HERALD may from time to time, change the location of the various drop points and may, from time to time, add additional drop points or withdraw existing drop points, providing that the total number of drops are not increased by more than three (3) per day, and provided further that the total mileage is not increased to more than an additional three (3) miles per day. Any increase in drops in excess of three (3) per day shall be compensated for at the rate of ___ cents per day for each additional drop. Any increase in mileage over three (3) miles per day shall be compensated for at the rate of ___ cents per mile per day for each additional mile. Any claim or claims by the CONTRACTOR for an increase in the contract price due to any increase in the number of drops transported or an increase in mileage shall be made in writing to THE HERALD by the 5th day of each month covering any demand for increased rates accruing and owing for the preceding calendar month. In the absence of such written demand, any claim for payment based upon increased rates shall be waived.

5. It is understood that the CONTRACTOR is and shall be considered for all purposes an independent contractor, and is not and shall not be considered for any purpose as an agent or employee of THE HERALD, and THE HERALD shall have no right of control over said CONTRACTOR in the performance of the within contract. It is further agreed that no deductions, withholdings, or contributions shall be made by THE HERALD on account of social security, industrial insurance, unemployment compensation, income tax, or otherwise, under any Federal or State Laws applicable to the relationship of employer and employee.

6. No sign or signs shall be placed upon any vehicle transporting or carrying said newspapers to the effect that said carrier is in anywise an agent or employee of THE HERALD, nor shall the CONTRACTOR hold himself out, for any purpose or any reason, as being an agent or employee of THE HERALD.

7. THE CONTRACTOR accepts exclusive responsibility in the employment by him of third parties including sub–contractors and employees of sub–contractors and agrees that he and they will comply with all applicable laws in respect to unemployment compensation, social security, income

tax withholdings, industrial insurance, medical aid, and workmen's compensation, and that he and they will comply with all provisions of the Workmen's Compensation Act, Medical Aid Act and other Industrial Insurance Laws of the State of Washington.

8. CONTRACTOR shall secure comprehensive public liability insurance at his own expense in limits of not less than _____ (personal injury) and _____ (property damage) covering his activities as a CONTRACTOR while using an automobile. Both THE HERALD and CONTRACTOR shall be named in the policy as the insured. Upon request of THE HERALD, CONTRACTOR shall exhibit his policy, or a counterpart, to THE HERALD.

9. The within Contract may be cancelled and terminated by either party, without cause, upon thirty (30) days' written notice mailed or delivered personally prior to the 1st day of any month.

Dated this ___ day of _____, 19__.

THE DAILY HERALD COMPANY

_____   By_____
CONTRACTOR

Petition for rehearing denied October 20, 1977.

Review by Supreme Court pending April 14, 1978.