[No. 2337–3. Division Three. March 23, 1978.]

WILLIAM S. BELGARDE, ET AL, *Respondents,* v.
NORWARD J. BROOKS, *Appellant.*

*Slade Gorton, Attorney General,* and *Gary L. Ikeda, Assistant,* for appellant.

*George H. Davies, Timothy C. Farris,* and *Vance, Davies, Roberts, Reid & Anderson,* for respondents.

ROE, J.—Plaintiffs were employed by Crown–Zellerbach at the former Biles–Coleman Lumber Mill near Omak, Washington. On Monday, Tuesday, and Wednesday, February 24, 25, and 26, 1975, the mill was closed due to lack of

work orders. The plaintiffs were thus involuntarily unemployed for the first 3 days of that week. Unemployment benefits then accrued, and normally would have been paid.

On Thursday of the same week, plaintiffs were recalled and went back to work. The next day, Friday, February 28, 1975, the plaintiffs did not report for work since they honored another union's picket line. By the following Monday, that labor dispute was resolved and plaintiffs were again back at work. Plaintiffs seek unemployment compensation for those first 3 days of that week. It is admitted that if the plaintiffs had not stopped work that Friday, they would be entitled to such benefits.

Plaintiffs' claimed compensation for the Monday, Tuesday, and Wednesday was denied by the Employment Security Department. The Department's hearing examiner held on appeal that, since their work stoppage on Friday was due to a labor dispute, they were disqualified from any benefits for the entire week. The Commissioner's decision on appeal, which adopted the examiner's findings and conclusions, was then appealed to the Superior Court for Okanogan County. The Department appeals the court's judgment reversing the Commissioner.

The defendant Department argues that the statute is unambiguous, and that participation in a labor dispute by the claimants for any part of the week disqualified them from benefits for the remainder of that week. Plaintiffs argue that the legislative intent was not to deprive claimants of otherwise accrued benefits nor was it to penalize them, in effect, because of involvement in a labor dispute for only a fraction of a week.

The question presented here is: Are the plaintiffs disqualified from all benefits for the entire week because their work stoppage on that Friday was due to a labor dispute?

Insofar as pertinent, RCW 50.20.090 provides:

An individual shall be disqualified for benefits for *any week* with respect to which the commissioner finds that his unemployment is due to a stoppage of work which

exists because of a labor dispute at, the . . . premises at which he is . . . last employed; . . .

(Italics ours.) "Week" is defined in RCW 50.04.360 as "any period of seven consecutive calendar days ending on midnight as the commissioner may by regulation prescribe." The Commissioner has, by WAC 192–12–020, provided that "The term 'week' shall mean a period of seven consecutive calendar days commencing with Sunday and ending at midnight the following Saturday."

But these definitions do not answer the precise question this case presents. To be answered is, what is the effect of the inclusion of the words "any week"? This raises interpretative questions. Did the legislature intend to disqualify a claimant for the entire week's benefits if he was involved in a labor dispute for any fraction of the week? Or is the disqualification only for that percentage of the week's unemployment which is actually due to involvement in a labor dispute? Or does the disqualification apply only if all of a week's unemployment is due to a labor dispute? Or does it apply if the dispute causes enough days of unemployment in a week as would render a worker ineligible for benefits for that week if he had been working on those days?

In interpreting the act, we must remember that:

The guiding rule and our major goal in an inquiry of this sort is to seek out, ascertain and give effect to the legislature's intentions (*Lynch v. Department of Labor & Industries,* 19 Wn. (2d) 802, 145 P. (2d) 265; *Graffell v. Honeysuckle,* 30 Wn. (2d) 390, 191 P. (2d) 858); and the process of attaining this goal evokes a number of familiar principles concerning problems of interpretation. If the language of the statute is plain, free from ambiguity and devoid of uncertainty, there is no room for construction because the legislative intention derives solely from the language of the statute. *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478; *State v. Spino,* 61 Wn. (2d) 246, 377 P. (2d) 868. But where the language employed conveys a doubtful or uncertain meaning, the act should be read as a whole and a meaning ascribed to it that avoids strained

or absurd consequences. *Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn. (2d) 319, 382 P. (2d) 639; *State ex rel. Thorp v. Devin,* 26 Wn. (2d) 333, 173 P. (2d) 994. Or, expressed otherwise, where doubt or uncertainty arises from the words used, the section under construction should be read in context with the entire act. *Hatzenbuhler v. Harrison,* 49 Wn. (2d) 691, 306 P. (2d) 745; *Behrens v. Commercial Waterway Dist. No. 1 of King Cy.,* 107 Wash. 155, 181 Pac. 892.

*Krystad v. Lau,* 65 Wn.2d 827, 844, 400 P.2d 72 (1965).

■ In the preamble to the act, RCW 50.01.010, the legislature declares that in its considered judgment the general welfare requires the establishment of unemployment reserves "to be used for the benefit of persons unemployed through no fault of their own and that this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum."

A preamble is not without its uses. It is not to be entirely rejected where the statute is ambiguous, although it will not be resorted to to create a doubt or misunderstanding which otherwise does not exist. Where there is a doubt, it will be given its place as a component part of the act.

" . . .

"When a statute is in itself ambiguous and difficult of interpretation, the preamble may be resorted to." *Den ex dem. James v. DuBois,* 16 N. J. L. 285.

Where the intent of the law is the object of inquiry, it is said that a preamble "discloses the intention of the legislature in enacting the statute." *Hanly v. Sims,* 175 Ind. 345, 93 N. E. 228, 94 N. E. 401.

" 'It is a good means,' says Lord Coke, 'to find out the meaning of the statute, and is a true key to open the understanding thereof.' " Lewis' Sutherland, Statutory Construction (2d ed.), § 341.

Without multiplying authorities or discussing those cited, we think it may be laid down as a general rule that, if there is a broader proposition expressed in the act than is suggested in the preamble, the body or enacting part of the law will prevail over the preamble. But if the body of the act can be given a construction that is consistent with

the purpose as declared in the preamble, it will be so construed.

*Huntworth v. Tanner,* 87 Wash. 670, 676–77, 152 P. 523 (1915). The preamble to the act was specifically referred to in *Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 235–36, 543 P.2d 343 (1975), where the court adverted to the recital that:

> "[T]he compulsory setting aside of unemployment reserves" is required to alleviate the many adverse effects of involuntary unemployment.

The court also stated, "[W]e have held, that the act should be liberally construed in order to accomplish this objective."

The Department urges that the benefit disqualifications provided in the act impose disqualifications in terms of weeks, rather than parts of weeks. To support this proposition, reference was made to the following: RCW 50.20.050, which disqualifies an individual from benefits beginning with the first day of the calendar week in which he has left work voluntarily without good cause; RCW 50.20.060, which disqualifies a worker from benefits beginning with the first day of the calendar week in which he is discharged or suspended for misconduct; RCW 50.20.070, which disqualifies a worker for benefits for any week with respect to which he knowingly has made a false statement or misrepresentation. But while the act generally does speak in terms of weeks, it does not do so in all respects; RCW 50.20.130 provides a pro rata one–seventh reduction of weekly benefits for each day an eligible individual is unavailable for work, and RCW 50.20.080, the disqualification for refusal to work, does not mention the term "week" at all.

Under the foregoing sections, the worker is at fault. While the preamble speaks of involuntary unemployment, which tends to negative fault, yet that does not provide an easy answer. As stated in *Ancheta v. Daly,* 77 Wn.2d 255, 261, 461 P.2d 531 (1969):

The disqualification provisions of the Employment Security Act are in large part based upon the fault principle . . .

but

The labor dispute disqualification is clearly different in that it applies regardless of fault.

Participation in a labor dispute cannot be said to imply fault. Such participation, as in this case, by honoring another union's picket line, may be transitory. Its duration may be of a day, or an hour, or even less. Or such participation may occur under circumstances where most individuals would shrink from crossing picket lines.

We believe, in reconciling the various parts of the act, that since the plaintiffs were involuntarily unemployed on the first 3 days of the week, their accrued unemployment benefits should not be forfeited because they engaged in a labor dispute on the last day of their work week. The other statutory disqualifications which expressly operate for a full week are based on fault. Disqualification from benefits already accrued, because of participation in a labor dispute, would act as a forfeiture. Some commentators believe the state should be neutral in a labor dispute. *See Ancheta v. Daly, supra.* That posture of neutrality, so far as it is possible, is highly desirable, but such a penalty would be inconsistent with that policy.

It is clear that no benefits are payable for the failure to work on Friday, February 28, which was due to the strike. *In re Employees of Pac. Tel. & Tel. Co.,* 31 Wn.2d 659, 198 P.2d 675 (1948). The overall purpose of the act is to compensate involuntary unemployment. Workers may be disqualified from benefits by a labor dispute, yet once benefits have accrued, they should not be lost without fault. For an example of liberal interpretation of the act which allowed benefits even for striking workers, because there was no stoppage of work, *see Shell Oil Co. v. Brooks,* 88 Wn.2d 909, 567 P.2d 1132 (1977).

The only case precisely in point which either party has cited is *Febbi v. Board of Review,* 35 N.J. 601, 174 A.2d 481

(1961), which was decided under a statute identical to Washington's in all material respects, N.J.S.A. 43:21–5(d). In that case the claimants had worked Monday and Tuesday, had struck on Wednesday and Thursday, and had been laid off on Friday. The plaintiffs had argued that there was no disqualification unless the entire week's work stoppage was due to a labor dispute, and defendant had argued, as the Department does here, that the disqualification was for the entire week if any of the work stoppage had such cause.

The court chose a middle course which seems to be the most equitable resolution. Relying on the policies of compensation and of state neutrality in labor disputes, the court stated:

> [T]o employ a formula which would exclude all wages lost for lack of work in a week in which there was some unemployment attributable to a labor dispute would impose an arbitrary penalty upon the employee, foreign to the legislative policy.

*Febbi v. Board of Review, supra* at 608. The court held that the unemployment attributable to lack of work was compensable, and ordered use of the formula which determines benefits when an employee works only part of a week. To maintain state neutrality in the labor dispute, the court further ordered that the claimants should be deemed, for purposes of applying that formula, to have earned a full day's pay on the days they were out on strike. We feel these principles are sound.

■ Defendant also argues that the agency's interpretation of the law it is charged with administering is entitled to great weight with the court. That is, of course, true. But the administrative agency does not make the law, nor are its conclusions of law binding on this court. *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974). It is the court's duty to examine and review issues of law under the statute. *Andreas v. Bates,* 14 Wn.2d 322, 128 P.2d 300 (1942). The facts here

are not in dispute. This court must interpret the statute according to its purposes, spirit and intent.

The judgment of the trial court is affirmed, granting benefits to the plaintiffs for the first 3 days of the week in which they were involuntarily unemployed and as if they had worked and had been paid for the remaining 2 days. The cause is remanded to the Employment Security Department for disposition consistent with this opinion.

GREEN and MCINTURFF, JJ., concur.