[No. 45341.    En Banc.    January 5, 1979.]

THE DAILY HERALD COMPANY, *Respondent*, v. THE
DEPARTMENT OF EMPLOYMENT SECURITY,
*Petitioner.*

*Slade Gorton, Attorney General, Joseph M. Littlemore, Senior Assistant,* and *Steven W. Smith, Assistant,* for petitioner.

*Anderson, Hunter, Dewell, Baker & Collins, P.S., Thomas R. Collins,* and *G. Douglas Ferguson,* for respondent.

BRACHTENBACH, J.—The sole issue here is whether a newspaper publisher, respondent Everett Daily Herald, is liable for unemployment compensation tax upon persons described as "bundle droppers." Those persons pick up bundled newspapers at the Herald's building and deliver them to "drop points" for ultimate delivery by the neighborhood carrier.

The Commissioner of the Employment Security Department (department) held the newspaper liable for these unemployment compensation taxes on the basis that there were "personal services" being performed within the meaning of RCW 50.04.100. The department's holding was reversed by the Superior Court. The Court of Appeals affirmed that judgment in *Daily Herald Co. v. Department of Employment Security,* 17 Wn. App. 865, 566 P.2d 929 (1977). We granted the department's petition for review and now reverse and reinstate the commissioner's ruling.

The relationship between the bundle droppers and the Herald is governed by a written contract. *See Daily Herald Co. v. Department of Employment Security, supra* at 872–74.

Paragraph 7 of the contract provides:

THE CONTRACTOR accepts exclusive responsibility in the employment by him of third parties including sub–contractors and employees of sub–contractors and agrees that he and they will comply with all applicable laws in

respect to unemployment compensation, social security, income tax withholdings, industrial insurance, medical aid, and workmen's compensation, and that he and they will comply with all provisions of the Workmen's Compensation Act, Medical Aid Act and other Industrial Insurance Laws of the State of Washington.

In its other paragraphs, the contract has terms to the effect that a bundle dropper must furnish his/her own motor vehicle; the dropper is to receive a money payment based on the number of drops made and miles traveled daily; the dropper is considered an independent contractor; and the Herald has no right of control over the bundle dropper's contract performance and will not make unemployment contributions. In addition, the contract prohibits the dropper from claiming to act as the Herald's agent, requires the dropper to obtain automobile insurance, and permits either party to terminate upon 30 days' written notice.

Respondent Herald contends, and the lower courts ruled, that the services performed by bundle droppers are not "personal services" within the meaning of RCW 50.04.100 because paragraph 7 contemplates the performance of services not only by bundle droppers personally but also by their "substitutes."

■ We must first decide the appropriate standard of review. The parties agree that the question of what constitutes "personal services" in this case is a mixed question of law and fact. A mixed question of law and fact exists in "'[c]ases where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . .'" *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974). What activities the bundle droppers perform is a question of fact; whether these activities constitute "personal services" is a question of law.

Agency decisions regarding mixed questions of law and fact are reviewed pursuant to subsection (d) of RCW 34.04-

.130(6), the "error of law" standard. *Department of Revenue v. Boeing Co.,* 85 Wn.2d 663, 667, 538 P.2d 505 (1975). Thus, under that standard, the court here will exercise its "inherent and statutory authority to make a de novo review independent of the [commissioner's] decision." *Weyerhaeuser Co. v. Department of Revenue,* 16 Wn. App. 112, 115, 553 P.2d 1349 (1976).

RCW 50.04.100, which has remained virtually unchanged since its 1945 enactment, provides:

> "Employment", subject only to the other provisions of this title, means *personal service,* of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.
>
> *Personal services* performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provisions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however,* That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor.

(Italics ours.) Laws of 1945, ch. 35, § 11, p. 79. Prior to 1945, the term "service," rather than the term "personal service," was used to define "employment." Laws of 1943, ch. 127, § 13, p. 337. It is contended that since under the contract the bundle dropping need not be done personally by a party to that contract, the department's commissioner erred when he ruled that bundle droppers perform "personal services."

Shortly after the 1945 enactment, this court reviewed RCW 50.04.100 in *Skrivanich v. Davis,* 29 Wn.2d 150, 186 P.2d 364 (1947). That case held that, pursuant to the 1945 amendments to the unemployment compensation act, fishing vessel owners were "employers" as to fishermen who worked their boats and that the fishermen performed "personal services." *Skrivanich,* at 165–66. The *Skrivanich*

court ruled that "the duties performed by the various members of the crews constituted personal services performed for the benefit of the boat owners, thereby falling within the term 'employment' as used in the unemployment compensation act." *Skrivanich,* at 161.

The Herald and the lower courts, however, rely on language in *Skrivanich,* taken from *Creameries of America v. Industrial Comm'n,* 98 Utah 571, 102 P.2d 300 (1940), to support the view that bundle droppers do not perform "personal services" for the Herald within the purview of RCW 50.04.100. *Creameries,* in discussing the meaning of the term "personal service" as it appeared in the "wages" section of the Utah unemployment compensation act, said at page 580:

> In ordinary usage the term "services" has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. The general definition of "service" as given in Webster's New International Dictionary is "performance of labor for the benefit of another;" "Act or instance of helping, or benefiting." The term "personal service" indicates that the "act" done for the benefit of another is done *personally* by a particular individual.

Cited with approval in *Skrivanich v. Davis, supra* at 161. Viewed by this definition, the appellate court held "the bundle droppers were not performing personal services for the Herald within the purview of RCW 50.04.100". *Daily Herald Co. v. Department of Employment Security, supra* at 871.

The language relied on by the newspaper and the Court of Appeals does not reflect accurately the spirit of *Skrivanich* and *Creameries.* Both cases followed closely after amendments which expanded the scope of unemployment compensation acts beyond the traditional master–servant relationship. *Skrivanich,* at 160; *Creameries,* at 577. Both cases ruled that under the new statutes "employment" relationships existed that formerly would not have been recognized by the common law. *Skrivanich,* at 158,

161; *Creameries,* at 583–84. In fact, the pertinent language from *Creameries* reads that "the way in which 'services' or 'personal services' appears in our unemployment compensation act indicates an intention on the part of the legislature to use the term in its broad general sense." *Creameries,* at 583. Similarly, the *Skrivanich* court said at page 158 that:

> It is apparent that the 1945 legislature intended and deliberately concluded to extend the coverage of the 1943 unemployment compensation act and, by express language, to preclude any construction that might limit the operation of the act to the relationship of master and servant as known to the common law or any other legal relationship.

The appropriate test for "personal services" in *Skrivanich* is not whether the services are performed personally by a party to the contract, but rather whether "the services . . . performed under the contracts were clearly *for* the appellants or for their benefit." *Skrivanich,* at 160; *see* In re Bajocich, Comm. Dec. 469 at 8 (1961) [Employment Security Department Commissioner's Decisions]. The services performed by the bundle droppers here, which facilitate the circulation of newspapers, clearly benefit the Herald and are "personal services" within the meaning of RCW 50.04.100.

This conclusion is not altered simply because the bundle droppers exercised a great deal of freedom in the manner in which they performed their services, or because they theoretically could employ substitutes. *See McIntyre v. Bates,* 45 Wn.2d 45, 47, 272 P.2d 618 (1954); *In re Miller,* Comm. Dec. 778, at 7–8 (1969), *aff'd,* 3 Wn. App. 503, 476 P.2d 138 (1970).

Our holding that the bundle droppers here performed ".personal services" is bolstered by the language of RCW 50.04.100's second paragraph, which reads:

> Personal services performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provi-

sions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however,* That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor.

Thus, personal services performed for the employing unit, the Herald, by the bundle droppers is considered employment for which the Herald has tax liability. However, in the case that the bundle droppers' services are performed by substitutes, the bundle droppers become the employers and they, rather than the Herald, are liable for unemployment compensation taxes. *See* In re Olson & Miller Logging Co., Comm. Dec. 967, at 4–6 (1973); *In re All–State Constr. Co.,* Comm. Dec. 564, at 4 (1964); *aff'd,* 70 Wn.2d 657, 425 P.2d 16 (1967).

Finally, we note that the legislature, in the preamble to the unemployment compensation act, declared that the general welfare requires the establishment of unemployed reserves "'to be used for the benefit of persons unemployed through no fault of their own and that this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum.'" *See Belgarde v. Brooks,* 19 Wn. App. 571, 575, 576 P.2d 447 (1978). The interpretation given to the term "personal service" by the respondent, the Superior Court and the Court of Appeals limits, rather than extends, the scope of the Washington unemployment compensation act.

The commissioner did not commit an error of law when he ruled that bundle droppers performed RCW 50.04.100 "personal services" for the Herald. The Court of Appeals is reversed and the commissioner's ruling that the Herald is liable for unemployment compensation taxes is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied February 7, 1979.