[No. 35034. Department Two. March 31, 1960.]

WILLIAM CLAIRE RISHER, *Appellant*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 350 P. (2d) 645.

*Schultheis, Maddock & H. G. Sutton,* for appellant.

*The Attorney General* and *Hollis B. Small, Assistant,* for respondent.

HILL, J.—The claimant appealed to the superior court from a determination of the board of industrial insurance appeals that he was not a "workman" within the purview of the workmen's compensation act at the time he sustained certain injuries, and, hence, not entitled to any benefit thereunder. The superior court reached the same conclusion as the board, and dismissed his appeal. From the order of dismissal he has appealed to this court.

A "workman" under that act is defined by RCW 51.08.180, which reads as follows:

" 'Workman.' 'Workman' means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his employment; also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for an employer under this title, whether by way of manual labor or otherwise, in the course of his employment. [ (i) 1939 c 41 § 2, part; 1929 c 132 § 1, part; RRS § 7675, part. (ii) 1937 c 211 § 2; RRS § 7674-1.]"

The claimant was regularly employed in the Puget Sound navy yard as a pipe fitter. He had acquired a logging truck in November, 1955, and had used it to haul Christmas trees; and if "anybody . . . wanted any logs to be hauled," he hauled them.

On the morning of May 10, 1956 (using part of his annual leave from the navy yard, and pursuant to a telephone conversation), claimant took his truck to where a logging op-

eration was being conducted by Harold J. Hoey and Floyd Warner. Warner designated the logs to be loaded; Hoey used his caterpillar to hoist them onto the claimant's truck, and the claimant placed them on the truck.

Peculiarly, the amount the claimant was to receive for hauling the logs was not discussed until the truck was loaded. The claimant's testimony was,

"Well, when I got the truck loaded he asked me how much I was going to charge for hauling those logs and I said around nine and a half a thousand."

Hoey directed him to take the logs to the Larson mill and gave him a card to give to Larson, indicating how the proceeds were to be disbursed. Risher testified as to the instructions on the card:

"It had $9.50 a thousand for Mr. Risher and it had, I think, $20.00 a thousand for Mr. Warner and the rest went to Mr. Hoey."

Hoey did not testify as to specific amounts, but he did say that "Risher wanted so much and Warner wanted so much and so I agreed to take what was left over."

It was Hoey's testimony that the logs belonged to Warner and that they were probably being sold for $40 a thousand. He testified further that Warner cut the timber and that

" . . . All I was doing was dragging them into the landing and using my 'cat' to hoist them on the truck."

Concerning equipment, he testified: "For this particular operation I had a 'cat' and arch."

In response to the question, "Now, did Mr. Hoey indicate to you that there was any definite amount of logs that he wanted you to haul?" the claimant answered,

"Oh, yeah, he said, 'There are quite a few logs back here,' and he says I could keep on working there and there were a lot of logs to haul and he said he would like it if I would haul for him."

The claimant took the load of logs, as directed, to the Larson mill, and, while waiting to unload his logs, he sustained a severe injury which is the basis of the present claim. This was, as indicated, on May 10, 1956. He filed a

claim with the department on May 10, 1957, the last day on which a claim could be filed under the act. RCW 51.28-.050.

In the meantime, it is conceded that he prosecuted a tort action against the Larson mill, necessarily taking the position that he was an independent contractor and not covered by the workmen's compensation act. His status as an independent contractor was not challenged in that action—the basic issues of negligence and liability being determined adversely to him.

There having been no determination of whether he was or was not a workman within the purview of the workmen's compensation act, his present contention is not prejudiced by his prior inconsistent position.

The claimant strenuously urges the existence of an employer-employee relationship between himself and Hoey and Warner as an entity, or with one or the other of them, particularly Warner, frankly conceding that our decisions in *White v. Department of Labor & Industries* (1956), 48 Wn. (2d) 470, 294 P. (2d) 650, and *Dieckman v. Department of Labor & Industries* (1956), 49 Wn. (2d) 378, 301 P. (2d) 763, probably foreclose him from contending that he was "working under an independent contract, the essence of which is his personal labor." Those cases, we are satisfied, require a negative answer to such a contention.

The claimant places great reliance, in his argument on behalf of an employer-employee relationship, on the case of *Burchett v. Department of Labor & Industries* (1927), 146 Wash. 85, 261 Pac. 802, 263 Pac. 746, and upon the following statement taken from the *White* case, *supra* (p. 477),

"First, although we hold that where an independent contractor must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools), the essence of his contract is not his personal labor, the mere fact that a man owns and uses machinery and equipment in his work does not make him an independent contractor. If in his operation of his truck, tractor, or other equipment, whatever it may be, he is subject to the direction and control of the employer, he is an employee and hence a workman under the act, even though the amount paid

for the use of his equipment may be much more than is paid for his services as the operator thereof. See *Burchett v. Department of Labor & Industries* (1927), 146 Wash. 85, 261 Pac. 802, 263 Pac. 746. (In that case, it was stressed, also, that Burchett was subject to discharge at any time, as an additional element in determining that he was an employee and not an independent contractor.)"

The claimant thought that the record before the board of industrial insurance appeals established, as a matter of law, the existence of an employer-employee relationship and moved for a summary judgment directing the department to give him the relief he was entitled to under the act. The department, likewise believing that the nonexistence of the employer-employee relationship was established and that an independent-contractor relationship existed, as a matter of law, moved for a dismissal. The superior court denied the motion for summary judgment and entered an order of dismissal.

We recognized, in the *White* case, that the decisive test by which to determine whether the relationship is employer-employee or independent contractor is whether the alleged employer has the right of direction and control over the alleged employee as to methods and details of doing the work, and we there stated that if a man (p. 477),

". . . in his operation of his truck, tractor, or other equipment, whatever it may be . . . is subject to the direction and control of the employer, he is an employee and hence a workman under the act, . . ."

The same test was also recognized in the *Burchett* case, *supra*, where the court stated (p. 88),

"All well reasoned authorities, including our own, are to the effect that there must be control, not only as to method but as to detail, to constitute employment. . . ."

See, also, *Hinds v. Department of Labor & Industries* (1928), 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225.

Since claimant urges that the *Burchett* case requires the finding that claimant was an employee, and states that the facts "were almost identical to those in the present case,"

a comparison is required. The facts in the *Burchett* case were stated as follows (p. 86),

". . . Respondent entered upon a service of some kind for one Christensen, whereby he agreed to haul logs for Christensen, furnishing his own truck and gas, and his own services, and to be compensated therefor at the rate of four dollars per thousand feet for all logs hauled. No definite quantity of logs was specified, respondent thus being free to quit at any time and Christensen being free to discharge him at will. From the time of the commencement of the work, it was continuous, respondent working until he was hurt, and hauling for no other person than Christensen during the period. Respondent hauled only the logs which were loaded upon his truck by other employees of Christensen in the woods, and was not permitted to haul any other logs. He unloaded the logs at a place designated by Christensen. Respondent was obliged to report at a certain time in the morning, when the other employees of Christensen were at hand to load the logs upon his truck. He was not permitted to carry any passengers upon his truck during the hauling, nor permitted to leave the logs on the truck over night."

The court, applying the "direction and control" test to these facts, held that (p. 89),

"In this case, while it is by no means free from doubt, it would appear that there was sufficient control by the employer over the method and details of doing the work to constitute respondent an employee or servant."

The trial court, in this case, made an excellent summation of the testimony, as it related to what it conceived to be, and was in fact, the only issue before the court, *i.e.*, whether the claimant "was an employee or whether he was an independent contractor as a matter of law," and we quote from it at some length:

"The plaintiff went to Hoey's house with his truck and they looked at his truck, discussed the length of the logs to be hauled, but there was no discussion regarding the terms of the operation. The plaintiff then followed Mr. Hoey down the hill to the landing, where Mr. Warner soon showed up, and they started loading the plaintiff's truck. Hoey lifted the logs from the pile with a caterpillar, Warner directing which logs should be selected, and they were then

lifted·onto the truck, where the plaintiff placed them and determined how many were to be hauled. After the truck was loaded, Hoey asked the plaintiff how much he was going to charge for the hauling, and Risher said, 'Around nine and a half a thousand.' Hoey said that there were a lot of logs to be hauled and that the plaintiff could keep on working and that he would like it if the plaintiff would haul for him. However, there was no specific amount of logs mentioned and no time limit for the hauling was fixed. Neither was there any mention or understanding as to whether the plaintiff could quit any time he wished or not. Mr. Hoey told him to haul the logs to the Larson Mill, which he did, and upon arrival there received the injury resulting in the present suit. The plaintiff had 25 days leave accrued from the Shipyard at the time of this accident. The plaintiff had hauled logs for others for a couple of years. The plaintiff received no directions or instructions from either Hoey or Warner as to what route he was to follow or what hours he was to work. There was more than one direct route to the mill but apparently the plaintiff was free to choose whichever he desired. The plaintiff also decided how many logs would be loaded and hauled. There was no agreement as to how many loads would be hauled per day, as to what hours the plaintiff would work, or what time would be allowed for lunch hour. There were no restrictions on his carrying riders or helpers or even an understanding as to whether the plaintiff himself would drive or whether he might hire someone else.

"In the loading operation, Warner, who owned and cut the timber, placed the tongs on the logs, Hoey, who was yarding the timber, operated the caterpillar, and the plaintiff had complete control of the actual loading and determination of how many logs would be carried. The plaintiff was to take a card to Mr. Larson at the mill which directed how the payments were to be made. The plaintiff was to receive $9.50· per thousand, which was what he had fixed as the price for hauling. According to the testimony of Mr. Hoey, another agreed amount was to go to Warner, and Hoey was to take what was left. Hoey also testified that there was some discussion of the approximate amount of logs to be hauled."

We agree with the trial court that there was substantially less evidence of any control over the methods and details of doing the work in the present case than in the *Burchett* case.

The record discloses that the claimant was controlled only to the extent of being shown the location of the logs to be hauled and told where to haul them, which would have been necessary in the case of a common carrier.

██ The trial court held that, as a matter of law, the employer-employee relationship did not exist and the claimant was an independent contractor. The testimony was not in conflict. There were no disputed facts; consequently, there was nothing to submit to a jury. We have repeatedly held that, in such a situation, the relationship of the parties is a question of law for the court. *Clausen v. Department of Labor & Industries* (1942), 15 Wn. (2d) 62, 129 P. (2d) 777; *Krause v. Department of Labor & Industries* (1940), 2 Wn. (2d) 268, 97 P. (2d) 1082. In the *Krause* case we said (p. 270),

"There being no disputed question of fact as to the relation of the parties, the question becomes one of law, . . ."

and in the *Clausen* case we said (p. 68),

". . . As the facts in this case are not disputed, and the question is solely one of law to determine the relationship which arose, . . ."

██ We are satisfied that the trial court correctly determined the issue of law presented to it.

In the *White* case, we directed attention to the fact that the legislature in 1937 obviated, in large part, the necessity of resolving difficult and troublesome distinctions between an employee and an independent contractor by bringing them both within the contemplation of the workmen's compensation act, if the essence of the independent contract was the personal labor of the independent contractor for any employer coming under the act (Laws of 1937, chapter 211, § 2, p. 1030). RCW 51.08.180.

The distinction must still be made, however, if there is an independent contract, the essence of which is not the personal labor for an employer under the act. *Dieckman v. Department of Labor & Industries, supra; White v. De-*

*partment of Labor & Industries, supra,* and cases there cited.

█ We hold that the claimant, at the time of his injury, was not an employee of Hoey and Warner, nor of either of them, and was an independent contractor.

█ Since there is no serious contention that the essence of the contract was the claimant's personal labor (indeed, that issue was never presented to the trial court), it follows that he was not a workman within the meaning of the workmen's compensation act, and the order of the superior court dismissing the claimant's appeal from the order of the board of industrial insurance appeals, which upheld the order of the department rejecting the claimant's claim, must be affirmed.

WEAVER, C. J., and OTT, J., concur.

FOSTER, J., concurs in the result.

FINLEY, J. (concurring in the result)—I adhere to the dissenting views expressed in the *White* case, 48 Wn. (2d) 470, 294 P. (2d) 650, as the proper resolution of the question in the case at bar. However, the majority in *White* were of a contrary opinion, and the decision therein is controlling until overruled. Consequently, I concur in the result reached by the majority in the case at bar.