[No. 29637-0-I.   Division One.   April 26, 1993.]

ANITA JEROME, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

---

*Paul J. Dayton* and *Short, Cressman & Burgess,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Mary C. Lobdell, Assistant,* for respondent.

WEBSTER, C.J. — Anita Jerome appeals the decision of the Superior Court affirming the final administrative decision of the Employment Security Department holding that she is liable for unemployment insurance tax contributions, interest and penalties. Jerome claims the Commissioner erred in finding that food product demonstrators doing business with her were employees and not independent contractors. We affirm.

## FACTS

Jerome was served an order and notice of assessment of $45,804.19 by the Employment Security Department covering the period, first quarter 1985 through the fourth quarter 1986. An administrative hearing was held and the administrative law judge (ALJ) determined that Jerome's workers were not exempt from taxation under the Employment Security Act, RCW Title 50. Jerome filed a timely petition for review. After review of audiotapes and documentary evidence, the Commissioner affirmed the ALJ's decision. On review, the Superior Court affirmed and this appeal followed.

Jerome has been in business for over 16 years as a proprietorship (d.b.a. Northwest Demo Service). Jerome is in the business of promoting food demonstrations, and her services are provided to brokers throughout the state of Washington. She has 300 to 400 demonstrators who can be called to demonstrate (at various grocery stores) on behalf of brokers. Jerome refers approximately 5,000 demonstrations a year and for the most part the demonstrators work every weekend.[1] She charges the brokerage firm $10.50 an hour for presentations and pays the demonstrators between $5.50 and $7.50 an hour for their services. She pays mileage whenever a demonstrator travels in excess of 20 miles to any site to make a presentation. If the brokerage firm does

---

[1] The Commissioner's finding of 50,000 demonstrations per year was in error. The error did not prejudice the determination of whether or not the food demonstrators were independently established in a trade or business. An error is harmless if no prejudice results from it. *See Scully v. Department of Empl. Sec.,* 42 Wn. App. 596, 602, 712 P.2d 870 (1986). Thus, the error was harmless.

not pay Jerome, the demonstrators, nevertheless, expect to be paid. She periodically raises the rate she charges the brokers and pays to the demonstrators.

If an applicant appears to be presentable and able to give a good presentation, Jerome hires the person and provides some training. The demonstrators are told to dress in a professional manner, instructed in the manner of cooking certain types of food items, and in making a proper demonstration to the public. Jerome ensures the demonstrators have adequate supplies of forks, spoons and cups and other equipment in order to make a proper presentation. The demonstrators are given a form which they fill out and return to Jerome after a presentation. It is then sent to the brokerage firm. Occasionally, representatives of Jerome will observe the presentation at the demonstration site. Jerome makes suggestions and resolves problems between the demonstrators and the store or brokerage firm.

The demonstrators sign a contract with Jerome which specifies that they are independent contractors. They may resign their association with Jerome at any time, and she may unilaterally decide not to call a demonstrator for future presentations. The demonstrators need not accept a referral, but certain expectations must be met. Customarily the demonstrators give advance notice whenever they are planning to take leave. The demonstrators are given cards promoting Jerome's business (Northwest Demo Service), and she occasionally advertises in newspapers and is listed in the yellow pages.

DISCUSSION

■■ Judicial review of a final administrative decision is governed by the procedural requirements of RCW 34.05.570, and relief will be granted only if:

> (d) The agency has erroneously interpreted or applied the law; [or]
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter; [or]

. . . .
(i) The order is arbitrary or capricious.

RCW 34.05.570(3).

Our review is on the record. Factual questions are reviewed under the clearly erroneous test, and we do not try the facts de novo. Issues of law are reviewed under the error of law standard of RCW 34.05.570(3)(d). Under this standard, we substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law if it falls within the agency's expertise in that special field of law. *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988).

Jerome first claims the Commissioner of the Employment Security Department erred in deciding that the demonstrators who worked for her were not independent contractors. Jerome argues that the demonstrators only work intermittently; they can and do independently obtain other work; and they would continue in their occupation if they no longer obtained referrals from her. Jerome contends that the 5,000 demonstrations per year supports her assertion that the demonstrators work only intermittently; this supports her position that the demonstrators are independent contractors. We disagree.

RCW 50.04.140 provides that personal services by an individual may be exempt from taxation if:

> (1)(a) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his or her contract of service and in fact; and
>
> (b) Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and
>
> (c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service . . .[.]

RCW 50.04.140(1). Failure by the demonstrators to meet any one of the tests will result in their services being deemed employment under the Employment Security Act. *In re All-State Constr. Co.*, 70 Wn.2d 657, 663, 425 P.2d 16 (1967).

■ The independent contractor requirement of former RCW 50.04.140(1)(c) "calls for an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship." *Schuffenhauer v. Department of Empl. Sec.*, 86 Wn.2d 233, 238, 543 P.2d 343 (1975) (quoting *In re All-State Constr. Co., supra*). In an analogous case the court upheld the Commissioner's finding that aluminum siding applicators were not independently established in business. *In re All-State Constr. Co., supra*. The applicators had no offices or place of business outside their homes. Their contracts involved no financial risk or investment in capital. They did not advertise, solicit business, or usually supply the material needed for the job. Material the applicator had to obtain was normally a small part of the total material used. Remuneration was based entirely on the time spent and did not involve financial risks which might involve financial loss or gain in excess of the normal wage rate. Moreover, they did not register themselves as a business under the new contractor registration law. *All-State*, at 663. The court stated the most important factor in determining whether an individual is independently engaged is the ability to continue in business if the worker loses a particular customer. *All-State*, at 666. The court elaborated, stating that factors such as investment, good will, and an independent clientele are indicia of the worker's ability to continue in business if the worker loses a particular customer. *All-State*, at 666.

■ Here, the demonstrators had no offices or place of business outside their home. They had little investment in business. Their equipment was primarily items taken from their household. Jerome provided protection from risk of injury by paying labor and industry insurance and from risk on nonpayment by a broker. Six out of ten witnesses had no independent clientele; they worked only for Jerome. They had no individual business cards. A substantial number of the demonstrators were not registered as independent businesses with

the State of Washington. Four of the demonstrators testified that they did not consider themselves a business. Three former demonstrators testified that they did not continue to demonstrate food products after they stopped working for Jerome. Jerome presented no evidence of any individual continuing in business after their association ended. Rather than being independent businesses, the demonstrators were an integral part of Jerome's business. In viewing this record as a whole, we find there is substantial evidence that the demonstrators lack the indicia of an independent business, and they could not remain in business if their relationship with Jerome were terminated.

Jerome next claims that even accepting all the findings of fact, the Commissioner erred as a matter of law in concluding that demonstrators were not independent contractors because she did not direct and control the details of their work. She argues that direction and control cannot be established by a showing of "general control", and the demonstrators' independent status is established by the fact that once the initial contact was made, demonstrations were arranged and conducted without her further involvement. We disagree.

■ "[T]he decisive test by which to determine whether the relationship is employer-employee or independent contractor is whether the alleged employer has the right of direction and control over the alleged employee as to methods and details of doing the work". *Risher v. Department of Labor & Indus.*, 55 Wn.2d 830, 834, 350 P.2d 645 (1960); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 498, 663 P.2d 132, *review denied*, 100 Wn.2d 1005 (1983). The key issue here is not whether Jerome actually controls. Rather, the issue is does Jerome have the right to control the methods and details of the demonstrators' performance. *Risher*, at 834; *Ebling*, at 498.

Here, Jerome provided training and directed the details of the demonstrators' performance. She instructed the demonstrators how to prepare food, demonstrate a product, and

dress, and that they should arrive 15 minutes early for demonstrations. She checked their performance and reviewed all reports. Jerome's ability to control is further evidenced by the fact that she could enforce her control by unilaterally deciding not to give referrals to any food demonstrator. Jerome had the right and ability to direct and control the details and methods of the demonstrators' work. They were not independent contractors.

The judgment is affirmed.

SCHOLFIELD and PEKELIS, JJ., concur.