917 P.2d 136 (1996)
82 Wash.App. 30
Donald R. PENICK, dba Double Eagle Trucking, Appellant,
v.
EMPLOYMENT SECURITY DEPARTMENT, Respondent.
No. 18616-1-II.
Court of Appeals of Washington, Division 2.
April 19, 1996.
Publication Ordered May 31, 1996.
*139 Joseph Lawrence Coniff, Jr., Olympia, for Appellant.
Andrew Arthur Fitz, Asst. Atty. Gen., Olympia, for Respondent. *137
*138 SEINFELD, Chief Judge.
Donald Penick challenges a $32,890.26 assessment for unpaid contributions to the employment security fund. He contends that the drivers of his company's trucks were independent contractors, not his employees. We conclude that Penick failed to present evidence qualifying him for the exemption set forth in RCW 50.04.140. Thus, we affirm.

FACTS
Penick owns Double Eagle Trucking (Double Eagle), a sole proprietorship that engages in the interstate transportation of goods. Primarily, it transports wood shakes from Washington to Northern California.
*140 With the deregulation of the trucking industry, Penick found it increasingly difficult to compete using truck drivers whom he paid by the mile traveled. Consequently, he required his employee-drivers to sign a contract changing their status to that of joint venturers or independent contractors. However, Double Eagle continued to own the trucks and operate them under its authority from the Interstate Commerce Commission (ICC). It also continued to provide fuel, repairs and maintenance, license, and insurance and to handle state and federal reporting requirements.
The contracts, which could be terminated by either party at any time, entitled the contract drivers to 20 percent of the gross revenue generated by the loads they hauled. The drivers paid their own federal income tax, social security and medicare taxes, and motel and food expenses; they did not receive sick leave, vacation, or other benefits. The drivers could hire a "lumper" if they needed help in loading or unloading.
In the event of an accident, the contract required the driver to pay damages not covered by the $2,500 deductible provision of Double Eagle's insurance policy. The drivers were also liable for shortages and cargo damage.
Double Eagle assigned the contract drivers to specific trucks. The drivers often installed a variety of amenities to make life on the road more comfortable, e.g., stereo systems, televisions, refrigerators.
Penick also used the services of owner/operator drivers to whom he paid 80 percent of their gross revenues. Double Eagle leased trucks from owner/operators for a specified period of time, but the owner remained responsible for truck repair and maintenance, insurance, license fees, trip expenses, and fuel costs. The leased trucks carried the Double Eagle insignia and were operated under Double Eagle's ICC authority. Penick agreed to give owner/operators 20-days notice before termination.
Although Penick usually secured the load for the outgoing trip, the contract and owner/operators drivers occasionally obtained their own loads. Once Penick obtained a load, he selected a driver without preference between his lists of contract drivers and owner/operator drivers. Any driver was free to reject an offer to haul a load secured by Penick and could choose, instead, to haul a load obtained by the driver.
Although Penick did not bear the responsibility for finding a load for the return trip, both Penick and the drivers profited from a return load. Penick obtained return loads for about half the trips; the drivers found their own return loads for the other half of the trips.
Double Eagle handled the billing and collection and provided bi-weekly draws for trip expenses to the drivers. It also made bi-weekly payments to the drivers for their share of the payment for a particular haul. The driver did not receive payment until the customer paid Double Eagle.
Penick required his drivers to clean the inside and outside of the truck, adhere to all federal and state laws and safety regulations, and to call in every day by 10 a.m. while en route. But he allowed the drivers to select their own routes and to select their driving hours, so long as the hours complied with legal requirements regarding maximum driving time and rest periods. He also permitted drivers to take others with them.
The Employment Security Department (Department) assessed Double Eagle for unpaid contributions to the fund, penalties, and interest for the period 1988 through the first half of 1990. Penick appealed the assessment.[1] An Administrative Law Judge (ALJ) heard testimony from Penick, from his company manager, and from a Department tax specialist.
Penick introduced as evidence copies of the contracts. He also provided federal income tax returns for two of the 44 individuals he had identified as contract drivers and evidence of separate insurance for a third individual *141 who was both an owner/operator and a contract driver.
The ALJ, the Employment Security Commissioner and the superior court all affirmed the Department's determination that the contract drivers were in employment and not exempt. On appeal, Penick contends that (1) the Commissioner lacked jurisdiction to decide the matter; (2) the contract drivers were not in his employment, as that term is used in RCW 50.04.100; and (3) he was entitled to an exemption for the contract drivers.

ANALYSIS
The purpose of the Employment Security Act (the Act) is to mitigate the negative effects of involuntary unemployment on the individual and society. RCW 50.01.010. The Legislature found that it could achieve this goal "only by application of the insurance principle of sharing the risks, and by the systematic accumulation of funds during periods of employment." RCW 50.01.010. To accomplish this goal, courts must liberally construe the statute, viewing with caution any construction that would narrow coverage. Shoreline Community College Dist. No. 7 v. Employment Sec. Dept., 120 Wash.2d 394, 842 P.2d 938 (1992).
RCW 50.04.100 and 50.04.140 guide the Commissioner in determining who is covered by the Act. Penick alleges that the Commissioner incorrectly interpreted both statutes with respect to Double Eagle's contract drivers.
Judicial review of an administrative decision is controlled by RCW 34.05.570. The court will grant relief only where:
(d) The agency has erroneously interpreted or applied the law; [or]
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter; [or]
....
(i) The order is arbitrary or capricious.
RCW 34.05.570(3).
This court reviews the decision of the Commissioner de novo. Cascade Nursing Services, Ltd. v. Employment Sec. Dept., 71 Wash.App. 23, 856 P.2d 421 (1993), review denied, 123 Wash.2d 1013, 871 P.2d 599 (1994). In doing so, we stand in the same position as the superior court. Cascade, 71 Wash.App. at 29, 856 P.2d 421.
Penick challenges many of the Commissioner's findings and conclusions. We review the factual findings under the substantial evidence standard. Lawter v. Employment Sec. Dept., 73 Wash.App. 327, 331, 869 P.2d 102, review denied 124 Wash.2d 1019, 881 P.2d 254 (1994); RCW 34.05.570(3)(e). To constitute substantial evidence, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true. Lawter, 73 Wash.App. at 332, 869 P.2d 102. On review, we give great deference to the Commissioner's findings. Having reviewed the entire record, we are satisfied that the Commissioner's findings are substantially supported by the evidence in the record. Thus, we consider whether they support the conclusions of law.
We review conclusions of law under the error of law standard, giving substantial weight to the agency's interpretation of the law. Cascade, 71 Wash.App. at 29, 856 P.2d 421. However, we may substitute our judgment for that of the agency. Cascade, 71 Wash.App. at 29, 856 P.2d 421. As we discuss below, we find no error of law in the Commissioner's conclusions.

I

JURISDICTION
The initial question in determining the applicability of the Act to a particular individual or group of individuals is whether the individual is in "employment." The Act defines employment as, "personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, *142 performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied." RCW 50.04.100.
Penick first suggests that the Commissioner lacks jurisdiction to consider the status of the contract drivers because the Employment Security Act covers only persons in "employment" and, he contends, the drivers are not in his employment. This argument, of course, is circular and begs the question before uswhether the drivers were in Penick's employment or were independent contractors.
The Act specifically confers on the Commissioner the responsibility to administer the Act. RCW 50.12.010. Numerous cases, some cited by Penick, deal with the Commissioner's determination of the issue of employee status. For example see Henry Broderick, Inc. v. Riley, 22 Wash.2d 760, 157 P.2d 954 (1945); Sound Cities Gas & Oil Co. v. Ryan, 13 Wash.2d 457, 125 P.2d 246 (1942); In re Farwest Taxi Serv., Inc., 9 Wash.2d 134, 114 P.2d 164 (1941); McDermott v. State, 196 Wash. 261, 82 P.2d 568 (1938). Further, the Administrative Procedure Act, RCW 34.05, confers jurisdiction upon the Commissioner to conduct hearings to decide disputed issues. RCW 50.32. Thus, Penick's jurisdiction argument lacks merit.

II

EMPLOYMENT
To determine if a work situation satisfies the definition of "employment," RCW 50.04.100, the Commissioner must determine (1) if the worker performs personal services for the alleged employer and (2) if the employer pays wages for those services. Skrivanich v. Davis, 29 Wash.2d 150, 157, 186 P.2d 364 (1947). Absent this, the alleged employer is not liable for contributions and the worker is not covered by the provisions of the Act. Skrivanich, 29 Wash.2d at 157, 186 P.2d 364.

A. Personal Services
Penick claims that the contract drivers did not provide personal services. This issue presents a mixed question of law and fact that we review under the error of law standard. Cascade, 71 Wash.App. at 30, 856 P.2d 421. This means that the court determines the correct law independent of the agency's determination and then applies it to the facts. Cascade, 71 Wash.App. at 29, 856 P.2d 421.
To support this contention, Penick first argues that the contract drivers should be treated the same as the owner/operator drivers. However, in concluding that the owner/operators were exempt the Commissioner does not rely on a finding that they were "not in employment." Rather, he found them to be in employment, but exempt from coverage under RCW 50.04.140. Thus, Penick's comparison between contract and owner/operator drivers does not aid us in determining whether the contract drivers were in employment.
Penick also relies on the contractual provision describing the drivers as independent contractors. However, contractual language is not dispositive; instead, the court considers all the facts related to the work situation. Jerome v. State, Employment Sec. Dept., 69 Wash.App. 810, 814-15, 850 P.2d 1345 (1993).
To fit within the definition of personal services, the work of the contract drivers must clearly have been performed for Double Eagle or for its benefit. Cascade, 71 Wash.App. at 31, 856 P.2d 421; Skrivanich, 29 Wash.2d at 160, 186 P.2d 364. Services not directly used to support the alleged employer's business are not personally provided to the alleged employer; thus, there is no employment relationship. Cascade, 71 Wash. App. at 30, 856 P.2d 421 (agency nurses did not provide services for the agency that placed them because the agency did not treat patients; thus, it realized only an indirect benefit from the nurses' services).
As the transportation of goods necessarily requires the services of truck drivers, it is clear that Double Eagle directly used and benefited from the drivers' services. Penick's testimony supports finding of fact 3, and the finding supports conclusion of law 3. Thus, the Commissioner did not err in concluding *143 that the drivers provided personal services to Double Eagle.
Pointing to the contracts, Penick also claims that the contract drivers were joint venturers rather than employees. Again, the contracts alone are not dispositive. Jerome, 69 Wash.App. at 813-14, 850 P.2d 1345.
A joint venture is in the nature of a partnership. Barrington v. Murry, 35 Wash.2d 744, 752, 215 P.2d 433 (1950). It is distinguished by four elements: (1) a contract, express or implied; (2) a common purpose; (3) a community of interest; and (4) an equal right to a voice and to control. Paulson v. County of Pierce, 99 Wash.2d 645, 654, 664 P.2d 1202 (1983).
Although the drivers had a contract with Double Eagle, satisfying element (1), evidence supporting elements (2), (3), and (4) was lacking. The mere fact that both Double Eagle and Penick were pursuing profit-making activities did not create a common purpose and community of interest. The court must determine joint venture status by considering all the facts and circumstances. Purdy & Whitfield v. Department of Labor & Indus., 12 Wash.2d 131, 140, 120 P.2d 858 (1942).
Here, Double Eagle could terminate a driver at any time; it controlled load assignments, owned the trucks, and controlled the accounts receivable; and it decided when and if to pay the drivers. Nor did the contract drivers have an equal voice or share control of management decisions. Thus, the Commissioner did not err in rejecting Double Eagle's joint venture theory.

B. For Wages
Citing Broderick, 22 Wash.2d 760, 157 P.2d 954, Penick also contends that the contract drivers did not perform for wages. RCW 50.04.100. The Broderick court held that licensed real estate brokers are independent contractors, not employees, because they do not receive wages for services.
The employment arrangement of the real estate brokers in Broderick differs significantly from that of the contract drivers at issue here. In Broderick, receipts from real estate sales were deposited into escrow or trust accounts entitled in the names of the buyers and sellers. The brokers and the company obtained their real estate commissions directly from this account when the transaction closed. Broderick, 22 Wash.2d at 768-69, 157 P.2d 954. The brokers' commissions were never intended to be and never did become the property of the company. Broderick, 22 Wash.2d at 776, 157 P.2d 954.
Here Double Eagle collected payment from the customers and then paid the drivers on a bi-weekly basis. There is no evidence of separate accounts. It appears that the funds belonged to Double Eagle until they were disbursed to the drivers. Nor did the drivers, like the brokers in Broderick, receive payment at the time of closure of a transaction. Thus, the Commissioner did not err in determining that the drivers received wages. As the contract drivers both provided personal services and received wages, the Commissioner properly concluded that the drivers were in "employment."

III

EXEMPTION
The employer must contribute to the compensation fund for workers in its employment unless the employer establishes that the workers are exempt. RCW 50.04.140; In re All-State Constr. Co. v. Gordon, 70 Wash.2d 657, 665, 425 P.2d 16 (1967) (citing In re Persons Employed at St. Paul & Tacoma Lumber Co., 7 Wash.2d 580, 110 P.2d 877 (1941)). To qualify for an exemption, the employer must prove that,
(a) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his or her contract of service and in fact; and
(b) Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and
(c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business, *144 of the same nature as that involved in the contract of service.
RCW 50.04.140(1).[2] The requirements are stated in the conjunctive; a failure to satisfy one results in a failure to prove the exemption. Miller v. Employment Sec. Dept., 3 Wash.App. 503, 505, 476 P.2d 138 (1970). We construe a statutory exemption in favor of the application of the tax. All-State, 70 Wash.2d at 665, 425 P.2d 16.

A. Free from Control & Direction
To satisfy the first prong of the exemption test, Penick must prove that the contract drivers were free from direction and control in the performance of their work. RCW 50.04.140(1)(a). In other words, we consider the amount of control Penick exercised over the "methods and details" of the contract drivers' work. Jerome, 69 Wash. App. at 816, 850 P.2d 1345. A right of termination for substandard work is "incompatible with freedom from control over the performance of services." Schuffenhauer v. Employment Sec. Dept., 86 Wash.2d 233, 237, 543 P.2d 343 (1975). An alleged employer's ability to control to whom work assignments are made is evidence of control. Jerome, 69 Wash.App. at 817, 850 P.2d 1345.
Although the drivers could chose their routes and work hours, the Commissioner found that Double Eagle had the right to terminate a driver at any time for unsatisfactory performance, determine job assignments, sanction drivers for repeated tardiness by not using that driver, and require drivers to check in daily while en route and to clean their trucks. These facts, found by the Commissioner, are sufficient to show that the drivers were not free from Double Eagle's direction and control.

B. Performance of Services
Further, Penick has not satisfied the second prong of the exemption test; he has failed to show that the drivers provided services outside the usual course of Double Eagle's business or outside all places of its business. RCW 50.04.140(1)(b). Services performed on land owned or leased by an alleged employer constitute services at a place of the alleged employer's business. Schuffenhauer, 86 Wash.2d at 237, 543 P.2d 343 (clam digging on land leased by employer not outside all places of business); Miller, 3 Wash.App. at 506, 476 P.2d 138 (timber harvesting on land leased by employer performed at place of business of employer).
Here, Double Eagle owns the trucks used by the contract drivers. Moreover, it paid for the gas, oil, repairs, maintenance and insurance of those trucks. Thus, it is logical and reasonable to find that the trucks are Double Eagle's place of business.

C. Independently Established
Nor did Penick establish the third prongthat the contract drivers are independently established in their occupation of driving trucks. All-State, 70 Wash.2d at 665, 425 P.2d 16. Proof of this prong requires evidence of an "enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship." Jerome, 69 Wash.App. at 815, 850 P.2d 1345.
Penick claims that the contracts prove that the drivers were independently established. But, as we stated above, the contract language alone is not dispositive. Jerome, 69 Wash.App. at 813-14, 850 P.2d 1345 (food demonstrators who signed contracts that they were independent contractors were actually employees).
The following factors provide indicia of an independently established business: (1) worker has separate office or place of business outside of the home; (2) worker has investment in the business; (3) worker provides equipment and supplies needed for the job; (4) the alleged employer fails to provide protection from risk of injury or non-payment; (5) worker works for others and has individual business cards; (6) worker is registered as independent business with state; and (7) worker is able to continue in business *145 even if relationship with alleged employer is terminated. Jerome, 69 Wash.App. at 815, 850 P.2d 1345.
Here there is no evidence that the drivers solicited, advertised, or otherwise held themselves out to the community as being in a separate business or that they established themselves as a separate business with the State. They had nothing to sell but their servicesthey did not own their trucks, books, records, customer listsor anything else indicative of an independent business. Thus, the Commissioner properly found that Penick had failed to satisfy the third prong of the test and that the contract drivers were not exempt from the provisions of the Act.
We affirm.
HOUGHTON and MORGAN, JJ., concur.
NOTES
[1] Double Eagle does not appeal that portion of the Department's assessment that relates to maintenance workers and office personnel.
[2] This statute, in effect during the period of the audit, was amended in 1992. The three-part test remains unchanged.