# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GULICK TRUCKING, INC., a Washington corporation, | No. 49646-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPARTMENT, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — Gulick Trucking Inc. seeks review of the Employment Security Department's (ESD) assessment of delinquent unemployment insurance taxes on the basis that Gulick's truck drivers were covered employees, rather than independent contractors, under Washington's Employment Security Act (ESA), Title 50 RCW. Gulick argues that federal law preempts the ESD from reclassifying Gulick's owner-operator drivers as covered employees and, alternatively, that Gulick established all three prongs of the ESA's independent contractor exemption. We follow the decision of Division Three of this court in *Swanson Hay Co. v. Employment Security Department*, 1 Wn. App. 2d 174, 404 P.3d 517 (2017), and affirm the ESD commissioner's decision.

## FACTS

### I. BACKGROUND

Gulick is an interstate motor carrier based in Vancouver, Washington that provides refrigerated carrier services. Gulick employs both company drivers, who drive equipment leased

by Gulick, and owner-operators, who drive equipment that they either own or lease from third parties. The majority of Gulick's drivers are owner-operators, and by relying on owner-operators, Gulick ensures that it has the flexibility to meet fluctuating demand without having to purchase trucks and trailers or terminate employees when demand lags.

## II. ESD AUDIT AND ASSESSMENT ORDER

In 2012, the ESD audited Gulick and reclassified 120 owner-operators as Gulick's "employees" for unemployment insurance tax purposes under the ESA. The ESD issued an order and notice of assessment for delinquent contributions, penalties, and interest. Stipulations between the parties subsequently reduced the total amount owed.

## III. OFFICE OF ADMINISTRATIVE HEARINGS PROCEEDINGS

Gulick appealed the ESD's order and assessment notice to the Office of Administrative Hearings (OAH). Before Gulick's hearing, it moved for summary judgment, arguing that the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C. § 14501, preempted reclassification of its owner-operators under the ESA.[1]

An administrative law judge (ALJ) denied Gulick's summary judgment motion regarding federal preemption as a matter of law, and the parties stipulated that Gulick's supporting declarations would be included in the record for purposes of appeal. Regarding the reclassification

---

[1] The FAAAA's preemption statute applies to motor carriers of property and subject to exceptions not relevant here says that

> a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier . . .) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

of Gulick's owner-operators as covered "employees," after an evidentiary hearing, the ALJ also entered an initial order that Gulick's owner-operators were in Gulick's employment and that they were not exempt independent contractors.

### IV. ESD COMMISSIONER PROCEEDINGS

Gulick then petitioned the commissioner for review of the OAH's summary ruling and initial order. The commissioner affirmed the OAH's decision.[2]

First, the commissioner addressed Gulick's federal preemption argument. The commissioner summarized Gulick's declarations submitted in support of its OAH summary judgment motion, in which various industry authorities described the reclassification's impact. The commissioner then adopted the OAH's analysis that the FAAAA did not preempt the ESA, as applied to motor carriers in the trucking industry.

Second, the commissioner concluded that the owner-operators were in Gulick's "employment," as defined by the ESA.

Third, the commissioner examined whether the ESA's independent contractor exemption applied and analyzed each of the exemption's three prongs. In doing so, the commissioner relied extensively upon the owner-operators' contracts with Gulick.[3]

Under the first prong, "freedom from control or direction," the commissioner noted "some autonomy" of owner-operators. Administrative Record (AR) at 1128. Namely, owner-operators could reject loads offered by Gulick; could arrange for loads with other brokers; selected their own

---

[2] The commissioner's 33-page order did not delineate individually numbered findings and conclusions.

[3] The parties agree that the contracts in our record are materially identical.

routes; were responsible for proper and secure loading and providing labor to load, transport, and unload commodities; paid equipment operation, maintenance, and repair costs; maintained various insurances; and had the right to employ drivers and had sole responsibility over their employees.

However, the commissioner concluded that Gulick failed to show that its owner-operators were free from Gulick's control or direction. Gulick "exert[ed] extensive controls over the methods and details of how the driving services are to be performed" that were "generally incompatible with freeing the owner-operators from [Gulick's] control and direction." AR at 1129, 1130. That is, Gulick exclusively possessed, controlled, and used trucking equipment during the agreement's term, and owner-operators could not transport unauthorized passengers or property and had to display identification showing that Gulick was operating the equipment and immediately remove the identification from the equipment when the agreement terminated. Gulick could fine owner-operators for failure to meet appointments or follow temperature requirements and could retake possession of equipment and complete a failed delivery.

Further, Gulick required owner-operators to conduct daily equipment inspections and deliver vehicle inspection reports. Gulick required that owner-operators furnish accessories to load and transport freight, contact Gulick immediately in event of incidents, check that cargo conformed to the loading manifest, and notify Gulick of discrepancies or be fined. Gulick also required owner-operators to pay usage fees and furnish accessories to install a telecommunication device in their trucks and to cooperate fully with dispatch and transport commodities in a manner that promoted Gulick's goodwill and reputation. Finally, Gulick could terminate the agreement upon a number of conditions, including failure to maintain equipment as defined by Gulick's maintenance guidelines.

4

Under the second prong, the commissioner concluded that Gulick failed to meet either alternative: that the services be performed outside Gulick's usual course of business or all places of business of Gulick for which such service was performed.

Under the third prong, whether owner-operators were independently established businesses, the commissioner noted that "some of the traditional factors" weighed in favor of finding independently established businesses. AR at 1138. For instance, some owner-operators had registered sole proprietorships. And owner-operators provided their own trucks and other supplies, made substantial investments in their businesses by purchasing trucks or trailers, and operated their businesses in their trucks. Other traditional factors weighed against such a finding— Gulick provided protection from customers' nonpayment, owner-operators could not haul third-party loads without Gulick's permission, owner-operators had to display Gulick's identification on their equipment, and Gulick prohibited owner-operators from competing or soliciting customers for the term of an agreement plus five years.

Ultimately, the commissioner concluded that the evidence weighed against owner-operators being independent contractors based on an additional, industry-specific consideration: "whether an owner-operator has his or her own [federal] operating authority so as to be able to independently engage in interstate transportation of goods." AR at 1139. Because owner-operators did not have operating authority to independently engage in interstate transportation of goods, this "paramount" factor weighed against them being independent contractors. Having concluded that the reclassification was not preempted and that Gulick failed to meet any of the three prongs for the independent contractor exemption under the ESA, the commissioner affirmed the OAH.

5

## V.  JUDICIAL REVIEW

Gulick sought review of the commissioner's decision in the superior court.  After the superior court affirmed the commissioner's decision, Gulick appealed.

## ANALYSIS

## I.  ESA BACKGROUND AND STANDARDS OF REVIEW

The ESA requires "employers" to pay unemployment insurance taxes for persons engaged in "employment." *Wash. Trucking Ass'ns v. Emp't Sec. Dep't*, 188 Wn.2d 198, 203, 393 P.3d 761, *cert. denied*, 138 S. Ct. 261 (2017).  Under RCW 50.04.100, "employment" includes "personal service, of whatever nature" performed under a contract.

The ESA definition of employment is "exceedingly broad" and includes even those who are "independent contractors" at common law, *W. Ports Transp., Inc. v. Emp't Sec. Dep't*, 110 Wn. App. 440, 458, 41 P.3d 510 (2002), "so long as they perform 'personal services' under a contract and an exemption does not apply." *Wash. Trucking Ass'ns*, 188 Wn.2d at 203.  In the employment security context, the relationship between two parties "is more likely . . . to be viewed as employment [than in any other context]." *Swanson Hay*, 1 Wn. App. 2d at 181.

An aggrieved employer may appeal an ESD assessment to an ALJ.  RCW 50.32.010, .030. Review of the ALJ's decision is by the commissioner, and the commissioner's ruling is subject to judicial review under the Administrative Procedures Act (APA), ch. 34.05 RCW.  RCW 50.32.070, .120.  Under the APA, we review the commissioner's ruling, not the ALJ's or superior court's ruling.  *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014).  "[W]e apply the appropriate standards of review from [the APA,] RCW 34.05.570[,] directly to the agency

record." *Affordable Cabs, Inc. v. Dep't of Emp't Sec.*, 124 Wn. App. 361, 366, 101 P.3d 440 (2004).

The party challenging the agency's action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). Our review is de novo, and we grant relief if "[t]he agency has erroneously interpreted or applied the law." RCW 34.05.570(3)(d); *Affordable Cabs*, 124 Wn. App. at 367.

## II. *SWANSON HAY*

*Swanson Hay* addresses the same issues on virtually identical facts to those presented here. *See* 1 Wn. App. 2d 174. Although opinions of other divisions of this court are not binding on us, we should follow them if their reasoning is sound. *West v. Pierce County Council*, 197 Wn. App. 895, 899, 391 P.3d 592 (2017). We agree with *Swanson Hay*'s analysis, and, accordingly, we adopt its reasoning and result to resolve the primary issues presented here, as set forth below.

## III. FEDERAL PREEMPTION

The parties dispute whether the FAAAA preempted reclassification of Gulick's owner-operators for ESA purposes. We agree with *Swanson Hay* that the FAAAA does not preempt the reclassification.

The FAAAA's preemption statute prohibits states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). *Swanson Hay* held that this statute did not preempt the ESD from assessing unemployment taxes on amounts paid to owner-operators. 1 Wn. App. 2d at 198. *Swanson Hay* reached this conclusion after rejecting reliance on *Western Ports* and determining that the ESA's definition of "employment" applied only to the imposition

of unemployment insurance taxes. 1 Wn. App. 2d at 190-92, 194. The carriers failed to show that the reclassification essentially dictated their prices, routes, or services, so that their preemption arguments failed. *Swanson Hay*, 1 Wn. App. 2d at 196-98.

We adopt this analysis, and we hold that as a matter of law, the FAAAA does not preempt the reclassification at issue here.

### IV. INDEPENDENT CONTRACTOR EXEMPTION

Gulick does not assert that the commissioner erred when it determined that the owner-operators were in Gulick's "employment" under the ESA. Rather, the parties dispute whether the commissioner erred when it determined that Gulick failed to meet any of the three prongs of the independent contractor exemption to the ESA. We hold that the commissioner correctly determined that Gulick failed to meet the first and third prongs and, accordingly, we affirm the commissioner's decision.[4]

In addition to reviewing questions of law de novo, we review the commissioner's factual findings for substantial evidence—that which is sufficient to persuade a fair-minded person of the truth or correctness of the agency's order. *Affordable Cabs*, 124 Wn. App. at 367; RCW 34.05.570(3)(e).

To show that an owner-operator fits within the independent contractor exemption, the carrier must show that

> (1)(a) [s]uch individual has been and will continue to be free from control or direction over the performance of such service, both under his or her contract of service and in fact; and

---

[4] We do not reach the second prong.

> (b) Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and
> (c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service.

RCW 50.04.140. The carrier must establish all three prongs. *W. Ports*, 110 Wn. App. at 452. We must construe exemptions to the ESA narrowly. RCW 50.01.010; *Wash. Trucking Ass'ns*, 188 Wn.2d at 203.

In *Swanson Hay*, the carriers failed to show that owner-operators met the first or third prongs of the independent contractor exemption so that the owner-operators were not exempt from ESA coverage. 1 Wn. App. 2d at 215, 219.

## A. FREEDOM FROM CONTROL OR DIRECTION

The first prong of the independent contractor exemption is whether an "individual has been and will continue to be free from control or direction over the performance of such service, both under his or her contract of service and in fact." RCW 50.04.140(1)(a). Gulick asserts that the commissioner erred when it determined that the owner-operators were not free from Gulick's control and direction. Gulick advances several arguments in support of its position—that the commissioner (1) mischaracterized lease terms and misapplied the law by relying on (2) federally required terms, (3) terms showing "general contractual rights," and (4) terms showing mere obligations or liquidated damages. Br. of Appellant at 15. These arguments fail for the reasons set forth below.

### 1. LEGAL PRINCIPLES

Related to the first prong of the independent contractor exemption, the commissioner may consider federally mandated terms in carriers' contracts with owner-operators to determine

whether the owner-operators were free from control or direction. *Swanson Hay*, 1 Wn. App. 2d at 212. A federal regulation, 49 C.F.R. § 376.12(c)(4), states that certain federally required provisions are not intended to affect whether the driver is an independent contractor of the authorized carrier lessee. This regulation does not dictate what terms states may consider when determining whether a carrier has shown that its drivers are free from control or direction. *Swanson Hay*, 1 Wn. App. 2d at 203.

Additionally, statutory, not common law, definitions are applicable to the definitions of "'employment'" and "'freedom from control'" under the ESA. *Swanson Hay*, 1 Wn. App. 2d at 206-08.

2.      MISCHARACTERIZATION OF LEASE TERMS

Gulick argues that certain contract provisions' references to "equipment" show that the provisions were evidence of control over the *equipment*, not over the owner-operators. Thus, Gulick argues that the commissioner erred when it relied on these provisions to show control over *owner-operators*.[5] We disagree.[6]

The commissioner found that many lease terms that referred to the "equipment" showed control over owner-operators. The provisions allowed Gulick to complete a delivery if an owner-operator failed to deliver a shipment, required owner-operators to complete inspections of the equipment at certain times, allowed Gulick to place equipment out of service that did not meet

---

[5] Gulick argues that the commissioner improperly relied upon terms showing control over *equipment* as showing control over *owner-operators*. Gulick provides no legal argument, and its argument is an attack on whether substantial evidence supports the commissioner's determination in this regard. Thus, it is addressed first.

[6] *Swanson Hay* did not address a similar argument.

federal or Gulick's standards, required owner-operators to provide loading and transportation accessories, forbade owner-operators from transporting unauthorized people or property, required owner-operators to display Gulick's identification during the term of the agreement, allowed Gulick to terminate an agreement for reasons including an owner-operator's failure to maintain the equipment by Gulick's guidelines, and required owner-operators to install a communications device in the equipment.

Nearly all of these provisions also expressly reference the owner-operator. By requiring the *owner-operator* to do something, these provisions are evidence of control over the owner-operator. Further supporting that the contracts contemplate control over the owner-operators is that the first section of the contract is titled "furnishing of transportation service." AR at 327 (capitalization and underlining omitted). The cited contract provisions and the contract as a whole thus provide evidence sufficient to persuade a fair-minded person that the contract contemplated control over the owner-operators. The commissioner's finding that the contract was evidence of control over "driving services" is accordingly supported by substantial evidence. *See Affordable Cabs*, 124 Wn. App. at 367. The commissioner did not err when it relied on contract provisions that showed control over the equipment as well as over owner-operators.

3.    FEDERALLY REQUIRED TERMS

Gulick argues that the commissioner misapplied the law when it relied on federally required terms.[7] But in *Swanson Hay*, Division Three of this court rejected the same argument

---

[7] These terms included the following: furnish and display Gulick's identification, 49 C.F.R. § 376.11(d)(1); Gulick's exclusive possession, control, and use of the equipment during the agreement, 49 C.F.R. § 376.12(c)(1); daily equipment inspections and delivery of reports, 49 C.F.R. § 379 app. A, part K(2); 49 C.F.R. § 396.11; 49 C.F.R. §§ 396.3, .13; and Gulick's right to place equipment out of service that did not meet federal standards, 49 C.F.R. § 385.5.

and held that RCW 50.04.140 has "no textual basis for concluding that the control exercised by the employer must be control it has freely chosen to exercise, as opposed to control it is required to exercise by law." 1 Wn. App. 2d at 210. We follow Division Three's reasoning that "federally mandated control counts" and reject Gulick's argument to the contrary. *Swanson Hay*, 1 Wn. App. 2d at 212. RCW 50.04.140 does not limit the evidence of freedom from control or direction to only freely chosen employer control. *Swanson Hay*, 1 Wn. App. 2d at 211.

Gulick also identifies a specific federal regulation, 49 C.F.R. § 376.12(c), that Gulick claims bars the ESD from looking to federally required contract provisions. But again, *Swanson Hay* examined and rejected this argument. 1 Wn. App. 2d at 201-03. *Swanson Hay* identified the provision, which states that certain required provisions are not intended to affect whether the driver is an independent contractor, as showing that the provisions were not intended to create "federal-law based vicarious liability." 1 Wn. App. 2d at 201. We agree that 49 C.F.R. § 376.12(c)'s language does not bar the ESD from looking to federally required contract provisions when determining employer control. Thus, we reject Gulick's argument.[8]

---

[8] At oral argument, Gulick faulted *Swanson Hay*'s analysis of this issue because Gulick claimed that the *Swanson Hay* decision failed to consider the Interstate Commerce Commission's 1992 statement that federally required control does not affect employment status and is meant to have a neutral effect. Wash. Court of Appeals oral argument, *Gulick Trucking, Inc. v. Emp't Sec. Dep't*, No. 49646-1-II (Dec. 7, 2017) at 13 min., 44 sec. (on file with court); *see Petition to Amend Lease & Interchange of Vehicle Regulations*, 8 I.C.C.2d 669, 671 (I.C.C. June 29, 1992). But *Swanson Hay* relied upon the language of the neutrality provision itself, which similarly expresses that the regulations are not intended to affect "employment" status. 49 C.F.R. 376.12(c)(4). Further, the 1992 statement that Gulick points out is consistent with *Swanson Hay*'s reasoning that the neutrality provision takes a "'hands off' approach . . . to deciding matters of state law." 1 Wn. App. 2d at 202. Gulick's argument is unpersuasive as a reason to depart from *Swanson Hay*'s holding that federally required terms count when determining control under the ESA.

4.    "GENERAL CONTRACTUAL RIGHTS"

Gulick argues that the commissioner erred because it relied on "general contractual rights"—the rights to supervise and ensure compliance. Br. of Appellant at 19. This argument derives from *Seattle Aerie No. 1 of the Fraternal Order of Eagles v. Commissioner of Unemployment Compensation & Placement*, 23 Wn.2d 167, 160 P.2d 614 (1945). But as *Swanson Hay* recognized, *Seattle Aerie*'s reliance upon common law principles to define an independent contractor was overruled by the legislature when it enacted RCW 50.04.100. 1 Wn. App. 2d at 205. That statute defines ESA-covered "employment" as "unlimited by the relationship of master and servant as known to the common law or any other legal relationship." RCW 50.04.100. We agree with *Swanson Hay* on this point.

Relatedly, Gulick argues that the term "control or direction" in RCW 50.04.140(1)(a) is undefined so that common-law tests apply. Again, *Swanson Hay* rejects this argument by correctly reasoning that the common law understanding of *control* does not apply to cases under Title 50 RCW because the legislature chose to abandon common law definitions when it adopted RCW 50.04.140(1)(a). 1 Wn. App. 2d at 207. We adopt *Swanson Hay*'s reasoning and reject Gulick's arguments about "general contractual rights."

5.    CONTRACTUAL OBLIGATIONS AND LIQUIDATED DAMAGES

Gulick contends that something more than contractual obligations must be identified in order to conclude that an individual is subject to control or direction. And Gulick argues that liquidated damages cannot be used as evidence of control. We reject Gulick's arguments.[9]

---

[9] *Swanson Hay* did not address a similar argument.

A contractual obligation is a legal duty that arises from a contract. BLACK'S LAW DICTIONARY 1242-43 (10th ed. 2014). Liquidated damages are amounts contractually stipulated as a reasonable estimation of damages in the event of a breach. BLACK'S 473.

Gulick provides no authority or legal argument for why contractual obligations and liquidated damages cannot be evidence of control or direction under RCW 50.04.140(1)(a). Rather, Gulick relies upon speculation that only an illusory contract would not contain evidence of control and argument that it is commercially reasonable to include liquidated damages clauses. Because Gulick bears the burden to show that the independent contractor exemption applies, its arguments fail. *See Swanson Hay*, 1 Wn. App. 2d at 215.

Further, it is logical that contractual obligations are evidence of control if they are obligations to perform some aspect of the service for which an individual is compensated. Similarly, by incentivizing compliance with contractual obligations, liquidated damages provisions can also be evidence of control. We reject Gulick's arguments.

6.    CONCLUSION REGARDING FREEDOM FROM CONTROL AND DIRECTION

Gulick's arguments that the commissioner erred when it determined that Gulick failed to show that the owner-operators were free from control or direction all fail. The commissioner properly relied upon evidence that Gulick exerted control and direction over the owner-operators—Gulick's exclusive possession, control, and use of the trucking equipment during the agreement's term; fines for failure to meet appointments or follow temperature requirements; Gulick's ability to retake possession of equipment and complete a failed delivery and to terminate the agreement upon a number of conditions; the prohibition against owner-operators transporting unauthorized passengers or property; and the requirements that owner-operators had to display

identification showing Gulick operated the equipment, remove the identification when the agreement terminated, conduct daily equipment inspections, deliver vehicle inspection reports, furnish accessories to load and transport freight, contact Gulick immediately in event of incidents, check that cargo conformed to loading manifests, notify Gulick of discrepancies or be fined, pay usage fees and furnish accessories to install a telecommunication device in their trucks, cooperate fully with dispatch, and transport commodities in a manner that promoted Gulick's goodwill and reputation.

Accordingly, we affirm the commissioner's determination that Gulick failed to establish the independent contractor exemption under the first prong. Thus, the owner-operators were covered employees under the ESA.

### B. CUSTOMARILY ENGAGED IN AN INDEPENDENTLY ESTABLISHED BUSINESS

The third prong of the independent contractor exemption is whether "[s]uch individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service." RCW 50.04.140(1)(c). Gulick argues that the commissioner erred under this prong when it overlooked evidence of independently established businesses and instead relied upon evidence that owner-operators did not have their own federal operating authority. Based on *Swanson Hay*, we disagree.

We traditionally rely upon a seven-factor test to determine whether an alleged employee was engaged in an independently established business:

> (1) [W]orker has separate office or place of business outside of the home; (2) worker has investment in the business; (3) worker provides equipment and supplies needed for the job; (4) the alleged employer fails to provide protection from risk of injury or non-payment; (5) worker works for others and has individual business cards; (6) worker is registered as independent business with state; and (7) worker

is able to continue in business even if relationship with alleged employer is terminated.

*Swanson Hay*, 1 Wn. App. 2d at 216 (quoting *Penick v. Emp't Sec. Dep't*, 82 Wn. App. 30, 44, 917 P.2d 136 (1996)). The seventh factor is the most important. *Swanson Hay*, 1 Wn. App. 2d at 216. Further, in the trucking industry, whether the owner-operators have independent federal operating authority is relevant under the third prong. *Swanson Hay*, 1 Wn. App. 2d at 218.

Here, the commissioner determined that some factors weighed in favor of owner-operators having independently established businesses: their places of business were outside their homes, in their trucks (factor 1); they made substantial investments (factor 2); they provided equipment and supplies (factor 3); and some had registered sole proprietorships during the covered period (factor 6). But the remaining factors, including the most important factor, weighed against owner-operators having their own businesses: Gulick provided protection against nonpayment (factor 4), and Gulick forbade its owner-operators from working for other carriers without permission or competing with Gulick during or for five years following the agreement (factor 5).

Most importantly, none of the owner-operators had their own operating authority because they all chose to operate under Gulick's authority (factor 7). *See Swanson Hay*, 1 Wn. App. 2d at 218. The commissioner explained that "one of the unique characteristics about the trucking industry is the federal requirement that an owner-operator obtain an operating authority . . . in order to engage in the business of transporting goods in interstate commerce." AR at 1137. "[O]therwise, the owner-operator must operate under another carrier's operating authority." AR at 1137.

Gulick's argument that the commissioner should not have relied upon whether the owner-operators had independent operating authority fails. *See Swanson Hay*, 1 Wn. App. 2d at 218. The

commissioner did not overlook evidence favoring Gulick but made findings related to each prong and carefully weighed the evidence. *Swanson Hay* also rejected the out-of-state authority upon which Gulick relies. 1 Wn. App. 2d at 217. We affirm the commissioner's determination that Gulick failed to meet the third prong of the independent contractor exemption.[10]

CONCLUSION

We affirm the ESD commissioner's decision that the FAAAA did not preempt the reclassification and that Gulick failed to establish the first and third prongs of the independent contractor exemption under RCW 50.04.140.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

SUTTON, J.

---

[10] Gulick argues that we should not defer to the commissioner. But no deference to the commissioner is required to affirm its decision as set forth above.